**UNITED STATES of America**

v.

**George E. JONES, Appellant.**

**No. 72–1867.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 25, 1973.

Decided May 14, 1973.

Rehearing Denied July 10, 1973.

---

12. *Id.* at 538, 91 S.Ct. at 1021.

534

Lawrence Speiser, Washington, D. C., for appellant.

Richard L. Beizer, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Roger M. Adelman, Asst. U. S. Attys., were on the brief for appellee. Joseph F. McSorley, Asst. U. S. Atty., also entered an appearance for appellee.

·Before WILBUR K. MILLER, Senior Circuit Judge, and TAMM and ROBB, Circuit Judges.

PER CURIAM:

Appellant was convicted by a jury of unlawfully distributing heroin. 21 U.S. C. § 841(a) (1970). The only issue meriting discussion involves the admission, over defense counsel's objection, of certain testimony relating to a similar transaction for which appellant was never tried. Finding no abuse of discretion, we affirm.

I

As a result of two alleged narcotic transactions appellant was arrested pursuant to a warrant on October 14 and indicted on December 17, 1971, for separate violations of 21 U.S.C. § 841(a) (1970) allegedly occurring "on or about" June 10 and June 19, 1971. Prior to trial the government discovered that the June 10 date was in error. A superseding indictment charging appellant with the same violations, but on *June 9* and June 19, was subsequently returned although appellant was not apprised of the change until late March of the following year. Before trial began in April of 1972 defense counsel successfully moved for dismissal of the charges concerning the June 9 transaction on the grounds that appellant was now seriously prejudiced in his attempt to reconstruct the events of that day coupled with the unjustified and unexplained neglect of the government. The prosecuting attorney immediately disclosed his intention to introduce evidence concerning the earlier transaction for the limited purposes of establishing identity and "that this defendant sells narcotics out of his house," a proposal which was sustained over objection by defense counsel.

II

The government's case-in-chief consisted primarily of the testimony of Officer Price, as buttressed by supporting personnel of the narcotics division. Price served as an undercover narcotics agent during much of 1971, and it was in this capacity that he came to know appellant. He testified to two purchases from appellant. First, on the afternoon of June 19, he encountered a sometime acquaintance, James Bealle, on the street. A brief conversation ensued, during which Price probed Bealle about acquiring narcotics. Bealle led him to appellant's home where Price and appellant engaged in a brief conversation concerning narcotics, culminating in a sale by appellant to Price. Price testified that after departing he returned home, field tested the drugs and received a positive reaction, placed them in an envelope labeled with the time of the transaction and its location, and recorded a description of appellant. The envelope was subsequently turned over to his superior for further testing and preservation pending charges. The prosecutor then asked Price:

Now, was June 19, 1971, the first time that you had ever seen this defendant?

To this and following questions Price responded that he met Bealle early in the evening of June 9 and, upon making a similar inquiry concerning narcotics, was taken by car to the home of appellant. They were introduced and a nearly identical transaction transpired between Price and appellant. Price further testified that the substance which changed hands was positively identified as heroin and that it was subsequently labeled and processed by the police in a manner similar to that recounted earlier.

Immediately after the testimony concerning the events of June 9 the trial judge instructed the jury, in a manner previously agreed to by both counsel, as to the limited purpose for which the evidence was introduced:

Ladies and gentlemen of the jury, evidence has been introduced that the defendant committed an offense simi-

lar in nature to the one for which he is now on trial.

This evidence was admitted solely for your consideration of whether it tends to show the identity of the defendant as the person who committed the offense with which he is charged, and whether or not it tends to show that the defendant had a scheme or design to commit crimes of the sort with which he is now charged.

You are not required to so consider this evidence, and whether you do so or not is a matter within your exclusive province.

You may not consider it as tending to show in any other respect the defendant's guilt of the offense with which he is charged.

This instruction was repeated at the conclusion of trial.

### III

■■■ We begin with the general proposition that evidence of prior criminal conduct is inadmissible, where character is not in issue, to prove disposition to commit crime from which the jury may infer that defendant committed the crime charged. Since such evidence is frequently relevant, the doctrine is rooted not in considerations of probative value but in collateral considerations of the confusion it may engender, the undue influence it may have on the jury, perhaps for the wrong reasons, and the unfairness occasioned by forcing an individual to prepare a defense which might necessarily encom-

pass a substantial part of his life. Here, however, the government argues that the testimony was relevant to show identity and common plan. We agree that the bulk of the testimony regarding the June 9 transaction was clearly admissible to establish identity, particularly in light of appellant's defense—a denial that the June 19 meeting occurred. The difficult problem is presented by testimony indicating that narcotics passed hands on June 9, evidence which is less clearly relevant to identity.[1] We need not press the identity question further, however, since the additional evidence is admissible to establish a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. United States v. Fench, 152 U.S. App.D.C. 325, 470 F.2d 1234, 1240 (1972).[2] The government was entitled to argue that the transaction of June 9 was a prelude which logically and naturally led to the transaction of June 19. We are presented with nearly identical transactions occurring within an eleven day span: both occurred in the home of appellant; both involved the sale of small quantities of the drug heroin; both were initiated through the same "contact", Bealle, and were consummated at the same unit price in his presence; and both occurred in the late afternoon or early evening. See United States v. Jones, 438 F.2d 461, 466 (7th Cir. 1971). The June 9 sale was highly relevant in this sense, a conclusion enhanced by appellant's denial that he sold narcotics to officer Price on June 9, that he even saw Price on June 19, and, indeed, that

1. *But see* Robinson v. United States, 148 U.S.App.D.C. 58, 459 F.2d 847, 855–858 (1972), where this court examined the relevancy of nearly identical evidence to establishing identity alone:

> To jurors, no less than to judges, the reliability of an eyewitness identification is apt to increase as the opportunities for observation of the subject and mental retention of his image are broadened, and as the reasons for close scrutiny and accurate recollection become more special. A witness who

> ventures an identification of a party simply on the basis of one encounter may well be believed, but the identification bids fair to command greater respect when accompanied by a showing that the witness encountered the party on other occasions, and that he had an important reason for studying and remembering his distinctive features. (Footnotes omitted.)

2. *See also* Proposed Fed.R. Evidence 404, H.R.Doc. No. 93–46, 93d Cong., 1st Sess. 7 (1973).

he ever had any relationship with narcotics traffic.

▆▆▆▆ Equally important, the policies which militate against admission of unquestionably relevant evidence and which underlie the rule concerning criminal character evidence are only marginally active. The transactions occurred in close proximity to each other and within ten months of trial. In addition to himself, appellant was able to present two witnesses to the June 9 rendezvous. He thus had little ground to argue that the "unfair surprise" occasioned by the June 9 testimony undermined his efforts to rebut. The two transactions were simple and easily separable, thus creating little risk of confusion. Finally, the potential prejudice to defendant was no more than that which inheres whenever similar evidence is adduced.[3] The possibility of abuse implicit in such evidence is clearly recognized and the recognition is manifested by the discretion vested in the trial judge to exclude it where the possible prejudice may outweigh the probative value. United States v. Fench, *supra*, 470 F.2d at 1240. The possibility alone is not sufficient to generally exclude all such evidence particularly where, as here, the safeguard of full instructions as to the limited purpose of the evidence is available and the instructions are given.[4] The problem is sufficient, however, for us to note that the prosecution would be wise to preserve such evidence for rebuttal, after the defense case has been sharpened and the judge may therefore more accurately consider the degree of relevancy and the potential for abuse. *See* United States v. Crawford, 438 F.2d 441, 448 (8th Cir. 1971) and United States v. Adams, 385 F.2d 548, 551 (2d Cir. 1967).

Having considered this and other issues presented on appeal, we conclude that the discretion vested in the trial judge was not abused.

Affirmed.

---

3. We are similarly unconvinced that dismissal of the June 9 charge because of the delay between commission of the act and correctly indicting appellant should necessarily have resulted in exclusion of all evidence relating to that event since different considerations inure in each decision. Whether a charge should be dismissed is a decision reached after considering the reasonableness of the delay and the resulting harm. Robinson v. United States, 148 U.S.App.D.C. 58, 459 F.2d 847, 851 (1972). Since no excuse was tendered for the mistake, which resulted in more than three additional months of delay in terms of appellant being apprised of the charges against him, the trial judge may well have felt that little or no consideration need be devoted to whether appellant was prejudiced. In deciding whether to admit the evidence for limited purposes, on the other hand, potential prejudice became a key consideration and the trial judge concluded that it would be minimal, particularly where limiting instructions were immediately given.

4. While considering the role potential for abuse should play in determining whether to admit evidence relevant for some other purpose but inadmissible if offered to show bad character, one noted commentator makes the following observations:

> [A]n exception [to admissibility] as is here suggested would handicap the State in its prosecution of the man of cumulative criminal daring. The greater the criminal brought to bar, the more closely the traces of his crimes were involved in other misdeeds, the more stupendous his scheme of crime culminating in the act charged, so much the more safe and invulnerable would he have rendered himself, if the law were made thereby to lose this evidential material. By every spot of blood with which he taints the steps of his criminal progress, he succeeds in increasing the safety of his new crimes. . . . "No man," in the neat phrase of Mr. Justice Brewer, "can by multiplying crimes diminish the volume of testimony against him."

1 J. Wigmore, Evidence 712 (3d ed. 1940).