UNITED STATES of America,
Plaintiff-Appellee,

v.

Fred McCORD and Kerry Luzader,
Defendants-Appellants.

Nos. 73–1879, 73–1880.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1974.

Decided Jan. 24, 1975.

Rehearing and Rehearing En Banc
Denied April 24, 1975.

**892**

Brent A. Barnhart, Indianapolis, Ind., David J. Colman, Bloomington, Ind., for defendants-appellants.

Stanley B. Miller, U. S. Atty., and Richard L. Darst, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before PELL and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Defendants McCord and Luzader were charged in a five count indictment with various offenses involving the unlawful distribution of cocaine. Count I of the indictment charged that, on or about August 27, 1972, McCord unlawfully distributed approximately 7.6 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). McCord was also charged in Count IV of the indictment with the knowing and intentional use of a public telephone to facilitate the unlawful distribution of cocaine, in violation of 21 U.S.C. § 843(b). Counts II and III of the indictment charged that Luzader unlawfully distributed approximately 34 grams of cocaine on or about September 5, 1972, and that, on or about August 27, 1972, he knowingly and intentionally used a public telephone to facilitate the unlawful distribution of cocaine by defendant McCord.

Count V of the indictment, charging conspiracy to unlawfully distribute cocaine, was dismissed on defendants' motion prior to trial.

Following a jury trial, defendants were found guilty on all counts. We affirm.

The evidence disclosed that Agents Jovonovich and Standifer of the Federal Bureau of Narcotics and Dangerous Drugs, in cooperation with officials of the Anderson, Indiana Police Department arranged with a cooperating individual, William Paige, to surveil a planned purchase of cocaine at Paige's home. Agent Standifer arrived at Paige's home on August 27, 1972 to pose as the purchaser of the cocaine. In Standifer's presence, Paige received a telephone call from an individual identifying himself as Luzader. The caller inquired as to how much cocaine Paige wanted to purchase. In response to Paige's statement that he wanted one-fourth of an ounce, the caller stated that they "would be out". Immediately thereafter, McCord called Paige and confirmed the planned transaction.

Within a short time, two persons arrived in an automobile at Paige's home. Paige went outside and returned with a small clear bag containing what was later identified as 7.6 grams of cocaine. He explained to Standifer that the seller, who Paige identified at trial as McCord, would not meet with Standifer, but would sell to Paige. Standifer gave Paige $250.00 in marked currency and Paige again went outside to complete the transaction.

Officer Murphy of the Anderson Police Department, who had been surveilling the transaction with Agent Jovonovich, testified that during the transaction the dome light of the automobile was on long enough for him to make a positive identification of McCord. The license number of the automobile was later traced and was shown to be registered to McCord.

Subsequently, Paige arranged to make another purchase of cocaine and, after a discussion with Agent Standifer, Paige

---

* Senior Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

called Luzader's telephone number. Luzader returned the call and Paige informed him that he was interested in purchasing one ounce of cocaine. On September 6, 1972, an individual driving a Volkswagen arrived at Paige's home. Paige gave the occupant of the car $900.00 in return for one ounce of cocaine and, as the money was being counted, Agents Orville Kleppinger and Standifer observed the driver through binoculars from a second story window of Paige's home. Both agents later identified the occupant of the car as Luzader. The license number of the Volkswagen was later traced and found to be registered to Luzader.

The government's final witness was Michael Hoppes. The defendants moved to prohibit any testimony by Hoppes which was not related to the transactions alleged in the indictment. The motion was denied and Hoppes was permitted to testify that, early in September of 1972, he had contacted Fred McCord to arrange a purchase of cocaine. McCord indicated that the cocaine would cost $900.00 per ounce. On September 8, 1972, Hoppes made arrangements by telephone to complete the transaction. He later approached Fred McCord in a supermarket parking lot in Anderson, Indiana, and was told by McCord that Luzader had the cocaine in a nearby filling station parking lot. Hoppes approached Luzader, who was seated in his car, and was given one ounce of cocaine. Subsequently, Hoppes unwittingly sold the cocaine to undercover Agent Standifer, and then paid McCord the $900.00 purchase price.

On appeal, defendant McCord asserts five grounds for reversal:

(1) That the government failed to make good faith discovery disclosures, in violation of the district court's pretrial order;

(2) That the trial court erred in overruling defendant's motion to strike the testimony of Agent Standifer.

(3) That the court erred in admitting, over objection, the "other of-fenses" testimony of Michael Hoppes.

(4) That the district court erred in overruling McCord's motion for a severance at the conclusion of the government's case-in-chief.

(5) That the court erred in giving certain jury instructions over defendants' objection.

Of the foregoing, Luzader specifically asserts the third and fifth issues raised by defendant McCord. The remaining three issues are raised only by the latter defendant.

■ McCord argues that, after some difficulty in obtaining compliance by the government with pretrial discovery orders, the district judge directed the government to provide defense counsel with a complete and current version of the criminal record of the government's principal witness, informant Paige. The court also ordered the government to make relevant members of the Anderson, Indiana Police Department available to the defense in order to fully define Paige's working relationship with the police. During the trial, defendant's cross examination of Paige established that the government's report setting forth Paige's prior criminal record, which had been tendered to the defense by the government, did not completely and accurately reflect the witnesses' criminal record. Cross examination of Paige further established that Officer Murphy of the Anderson, Indiana Police Department had demonstrated, in his discussions with Paige, that Murphy possessed knowledge of certain criminal activities involving Paige, beyond those which Murphy had disclosed to defense counsel after the officer had been made available to McCord's attorneys for questioning pursuant to the district court's aforementioned pretrial order. McCord argues that the government's failure to make a good faith and thorough disclosure of Paige's criminal background deprived the defendant of due process of law, particularly since much of the government's case rested upon the testimony of this witness.

Once the aforementioned facts had been established through cross examination, a thorough examination of Paige was allowed by the district court regarding his prior criminal activities, including criminal misconduct for which he had not yet been charged. A review of the record indicates that the jury was thoroughly apprised of the full extent of Paige's prior criminal activities, as well as his cooperation with the Anderson Police Department. In addition, Officer Murphy was called by the government as a rebuttal witness and testified that, at the time he spoke with defense attorneys, he had not remembered Paige's involvement in uncharged illegal activities, and that he had not intentionally withheld that information.

The record before us does not demonstrate that the government intentionally misstated facts regarding Paige's prior criminal record. Nor does the record show that Officer Murphy intentionally withheld such information. And, since the witness thoroughly and candidly answered questions during cross examination regarding his past criminal record, other criminal activities, and any promises made by the government to him in return for his cooperation, it seems clear that defendant was not prejudiced by the inaccurate and incomplete information which he had received in this regard prior to trial. If the government had intentionally failed to accurately disclose such relevant information after disclosure had been directed by the trial court, defendant's failure to demonstrate prejudice would not necessarily be controlling, and reversal of the conviction might well be warranted. Moreover, where the government's failure to satisfactorily comply with such an order is the product of negligence, rather than bad faith, reversal might nevertheless be required where prejudice is shown. Along these lines, Judge Stevens' excellent opinion in United States v. Ott, 489 F.2d 872 (7th Cir. 1973) should be required reading. But here, McCord has demonstrated neither bad faith nor prejudice, thus distinguishing the facts of this case from those of *Ott* and requiring our rejection of McCord's claim that he was denied due process of law.

■ McCord next contends that testimony of Agent Standifer should have been stricken by the trial court because the government failed to produce a transcript of Standifer's testimony before the grand jury upon motion by McCord pursuant to 18 U.S.C. § 3500. In response to McCord's motion, the government represented that the grand jury testimony of Agent Standifer had not been transcribed. As did the defendant in United States v. Aloisio, 440 F.2d 705 (7th Cir. 1971), McCord contends that the government should be required to preserve the testimony of grand jury witnesses "in order to implement the right of a defendant to access to a witness' grand jury testimony on subjects about which he subsequently testifies at trial." 440 F.2d at 708.

Rule 6(d) of the Federal Rules of Criminal Procedure presently permits, but does not require, the stenographic transcription of grand jury testimony. Although some district courts (e. g., the Northern District of Illinois) have adopted local rules requiring that grand jury testimony be transcribed, the Federal Rules do not presently demand that this procedure be followed. As this court stated in *Aloisio,* supra:

"This approach, though justifiably criticized on several grounds, has nevertheless been uniformly observed by other Circuits. . . . While we agree that the preservation of grand jury testimony is the wise practice, we are presently unwilling to bind the various district courts of this Circuit to such a practice. Rather, we will rely upon the individual district courts to exercise their local rule-making powers in this area pending any amendment to Rule 6(e) of the Federal Rules of Criminal Procedure". 440 F.2d at 708.

Defendant's contention that his conviction should be reversed on this ground is, therefore, rejected.

McCord further contends that the denial of his motion for severance, made at the close of the government's case-in-

chief pursuant to Rule 14 of the Federal Rules of Criminal Procedure, constituted reversible error. He argues that it was manifestly unjust to compel him to stand trial as Luzader's co-defendant because of the extensive evidence introduced solely against Luzader concerning the September 6 transaction.

The disposition of a Rule 14 motion claiming prejudicial joinder of offenses or of defendants is a matter soundly within the discretion of the trial judge. Accordingly, the denial of such a motion is subject to reversal on appeal "only if abuse of discretion is shown". United States v. Pacente, 503 F.2d 543 (7th Cir. 1974). Under the circumstances of the instant case, the denial of defendant McCord's motion was well within the district judge's discretion. Each of the defendants participated to some extent in the August 27 transaction which formed the basis for three of the four counts. Further, the August 27 and September 6 transactions, as well as the transaction involving Michael Hoppes (discussed *infra*), were executed in a markedly similar manner. In addition, the district judge had earlier cautioned the jury to consider evidence regarding the September 6 transaction only as it applied to Luzader. Under these circumstances, the denial of McCord's motion was not error.

Both defendants complain that it was improper to permit Michael Hoppes to testify regarding his purchase of one ounce of cocaine from McCord and Luzader in early September, 1972, arguing that the admission of evidence of criminal conduct other than that alleged in the indictment constituted prejudicial error. At trial, the government offered several arguments to justify the admission of Hoppes' testimony, one of which was that this evidence could be offered *in anticipation* of an entrapment defense to show defendants' predisposition to commit the offenses with which they were charged.

The record indicates that although the defendants had considered the possibility of arguing entrapment, no positive effort was made to rely upon this defense prior to the close of the government's case-in-chief, either during defendant's opening arguments or through cross examination of government witnesses. Since the rule in this Circuit requires the defendant to admit involvement in the acts alleged in the indictment in order to raise entrapment as a defense, United States v. Roviaro, 379 F.2d at 911, 914 (7th Cir. 1967), evidence of other criminal conduct to show predisposition should not be admitted until the defense concedes involvement in the acts alleged, or at least demonstrates clearly that the entrapment defense will ultimately be raised. No such clear indication was made in the instant case prior to Hoppes' testimony and, as will be discussed, *infra*, defendants ultimately asserted without equivocation that they would not argue entrapment.

Hoppes testimony, however, was admissible to show *modus operandi*, since the Hoppes transaction, occurring close in time to those alleged in the indictment, bore a remarkably strong resemblance to the pattern of conduct with which defendants were charged. United States v. Hampton, 457 F.2d 299, 302 (7th Cir. 1972). The type of narcotics sold to Hoppes, cocaine, was the same as that sold on occasions alleged in the indictment. It was sold from an automobile for $900.00 per ounce after the transaction had been arranged by telephone. Finally, the Hoppes transaction occurred within a week to ten days of the offenses charged in the indictment. As this Court stated in United States v. Jones, 438 F.2d 461, 466, wherein the admission of such evidence was upheld,

> "[t]he June 5th sale of cocaine was a similar offense, proximate in time, involved the same three individuals . . . and an almost identical *modus operandi* was employed. It bore a singular strong resemblance to the pattern of the offense charged. And, it was so related to and connected with the crime charged that the proof of the one tended to corroborate the proof of the other."

Accordingly, evidence of the Hoppes transaction was properly admitted.

Finally, both defendants assert that Instructions No. 20 and No. 25 should not have been given by the trial court. Instruction No. 20 advised the jury regarding the manner and extent to which evidence of the Hoppes transaction may be considered. Essentially, the jurors were instructed that evidence of the Hoppes transaction could not be considered until the jury had determined beyond a reasonable doubt that defendants had performed the acts alleged in the indictment. The Instruction further advised the jury that, if and when such a determination were made, evidence of the Hoppes transaction could then be considered as indicative of "an independent voluntary disposition" to commit the acts charged, or to "determine the state of mind or intent with which" the defendants performed the acts charged.

We have reviewed Instruction No. 20 in its entirety, and find it neither an incorrect statement of law nor confusing. Accordingly, we reject defendants' contention with respect to the giving of this instruction.

Instruction No. 25 advised the jury regarding the law of entrapment. As defendant McCord concedes, the Instruction is a proper statement of the law. The issue raised by the defendants concerns whether the instruction should have been given, over defendants' objection, where defendants clearly indicated that they did not intend to argue entrapment.

Since, as we have indicated, the mere anticipation that an entrapment defense might be asserted was not a sufficient basis for the admission of evidence regarding the Hoppes transaction, it follows that Hoppes' testimony did not warrant the giving of an instruction on entrapment. Under these circumstances, it would have been a better practice to sustain defendants' objection to the giving of the instruction. We note, however, that the instruction given by the court did not advise the jury that the defendants admitted the acts alleged in the indictment, nor did it assert that the defendants were relying upon entrapment as their defense. The instruction merely informed the jury that, even if the government proved the conduct alleged in the indictment, defendants could nevertheless be acquitted if the jury should find that the defendants "had no previous intent or purpose to commit any offense of the character here charged, and did so only because [they were] induced or persuaded by some law enforcement officer, . . . .". Under these circumstances, any error in the giving of Instruction No. 25 must be considered harmless.

For the foregoing reasons, the judgment of the district court is affirmed.

Affirmed.