UNITED STATES of America,
Plaintiff-Appellee,

v.

Ervin COWSEN, Defendant-Appellant.

No. 75–1627.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1975.

Decided Feb. 6, 1976.
Certiorari Denied June 1, 1976.
See 96 S.Ct. 2227.

Leo V. Garvin, Jr., St. Louis, Mo., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., William C. Evers, III, Asst. U. S. Atty., E. St. Louis, Ill., for plaintiff-appellee.

Before SWYGERT, PELL and TONE, Circuit Judges.

TONE, Circuit Judge.

Defendant appeals from his conviction of distributing heroin in violation of 21 U.S.C. § 841(a)(1), urging that the delay between the offense and the indictment was unreasonable and that the District Court erred in ruling on evidence and instructing the jury. We affirm.

On October 28, 1974, in the afternoon, undercover agents Louise Banks and John Lofton of the Illinois Bureau of Investigation ("IBI"), accompanied by an unidentified informant and one Thomas Hundley, drove to the parking lot of an apartment complex in East St. Louis for the purpose of purchasing a quantity of heroin. On arrival agent Banks and Hundley left the car and entered a nearby apartment building. They later returned to the parking lot, where they were met by a person both undercover agents identified at the trial as defendant. According to the trial testimony of agent Banks, defendant was informed that they wished to purchase more heroin than he had available, whereupon he indicated that they could wait for his supplier, who would be along in a short while. Agent Banks and Hundley then returned to the car and defendant went into the building. He subsequently came out to the car, where the two agents, the informant, and Hundley were waiting, with the agents sitting in the rear seat, and gave Hundley five packets of a substance later determined to contain heroin, in return for $50.00. Defendant then returned to the building. Before long the agents observed a person driving an orange and white Grand Prix arrive and enter the building. After that person came out of the building and drove away, defendant returned to the car and sold Hundley seven more packets of the same substance for $70.00.

The activities of the IBI agents on October 28, 1974, were part of an undercover drug investigation begun by the IBI in November of 1973 and concluded in January or February, 1975. The agents took no action with respect to defendant until March 5, when agent Banks identified defendant from his photograph as the person who had made the sales on October 28. The indictment against defendant was returned on March 12, and he was arrested on March 17. The trial took place on May 27.

Both agents Banks and Lofton identified defendant at the trial as the seller of the heroin. The arresting officers, two detectives of the East St. Louis Police Department, both testified over objection that, while approaching the police car at the time of the arrest, defendant told a bystander "to go tell his old lady that he was gone for good this time." One of these officers testified on cross-examination that defendant also said that "he had been waiting on us," and conjectured that the reason defendant may have been expecting the police was that he had read about the indictment in the newspaper the previous week.

Defendant elected not to take the stand and offered no evidence. A request of defendant's counsel for an in-

struction that the identity of defendant was an issue raised by the evidence in the case and that the government had the burden of proving the identity of defendant as perpetrator of the crime charged was refused. Defendant was found guilty.

## I.

Defendant's main argument on appeal is that the delay between the time the offense occurred and the time of his indictment was unreasonable and that the indictment should therefore have been dismissed. Based on a stipulation that if defendant took the stand he would testify that he could not remember the events of October 28, 1974,* he argues that the delay substantially prejudiced his defense. He also contends that the prejudice was compounded by the use of an unreliable method of identification, and that the government has not justified the delay.

Defendant relies upon a line of cases in which the Court of Appeals for the District of Columbia has required a "detailed judicial exploration of the underlying reasons" for delays of over four months between an undercover agent's detection of a narcotics offense and notice to the accused that he will be charged, if the defendant has come forward with a "plausible claim" of prejudice. *Robinson v. United States,* 148 U.S.App.D.C. 58, 459 F.2d 847, 851, 852 (1972). The prejudice may relate to the defendant's ability to present his defense or to the reliability of the government's evidence. The first category of prejudice includes inability to remember what took place on the date the transaction was to have occurred, thereby making it impossible for the defendant to establish an alibi, and disappearance of a material witness. The second category relates primarily to the reliability of the techniques which the government uses to identify the defendant as the perpetrator of the crime. *Id.* at 852–853. See also *Dancy v. United States,* 129 U.S.App.

D.C. 413, 395 F.2d 636 (1968); *Woody v. United States,* 125 U.S.App.D.C. 192, 370 F.2d 214 (1966); *Jackson v. United States,* 122 U.S.App.D.C. 124, 351 F.2d 821 (1965); *Ross v. United States,* 121 U.S.App.D.C. 233, 349 F.2d 210 (1965).

■ We decline to adopt a different rule for narcotics cases than for other cases. A claim of faded memory, the veracity of which can rarely be satisfactorily tested, can be plausibly asserted in almost any criminal case in which the defendant is not charged within a few weeks, at most, after the crime. The possibility or likelihood of faded memory has not, however, in itself, been viewed as prejudice that requires dismissal of an indictment, despite delays of much longer than the four and one-half months shown here. See, *e. g., United States v. Marion,* 404 U.S. 307, 325–326, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Mallah,* 503 F.2d 971, 989 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975); *United States v. Hauff,* 461 F.2d 1061, 1065–1066 (7th Cir. 1972), *cert. denied,* 409 U.S. 873, 93 S.Ct. 203, 34 L.Ed.2d 124 (1972); *United States v. Golden,* 436 F.2d 941, 943–945 (8th Cir. 1971), *cert. denied,* 404 U.S. 910, 92 S.Ct. 236, 30 L.Ed.2d 183 (1971). And, while defendants in narcotics cases often lack "desk pads and social calendars to assist them in determining where they were at a particular time many months before," *Powell v. United States,* 122 U.S.App. D.C. 229, 352 F.2d 705, 711 (D.C. Cir. 1965) (dissenting opinion), quoted in *Robinson v. United States, supra,* 459 F.2d at 852 n. 31, the same is true of defendants in other types of criminal cases. Any person is likely to have difficulty in remembering what he was doing on a particular date during the hours when many, if not most, crimes are committed. If the limitation period for prosecution were measured by the length of the defendant's memory of routine events, few crimes could be prosecuted. As Mr. Jus-

---

* The stipulation was made for the purpose of defendant's motion to dismiss the indictment on the ground of prejudicial delay. The government did not, however, stipulate to the

truth of defendant's stipulated testimony of lack of recall, and his statements at the time of arrest, described in the text, *supra,* arguably raise doubts about its veracity.

tice White said in *United States v. Marion, supra,* 404 U.S. at 324–325, 92 S.Ct. at 465:

"Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." (Footnote omitted.)

See also *United States v. Hauff, supra,* 461 F.2d at 1065.

■ It was recognized in *Marion* and *Hauff* that a delay may be shorter than the statute of limitations and yet so unreasonable and so prejudicial to the defendant's right to a fair trial that due process requires the dismissal of the indictment. See also *United States v. Bornstein,* 447 F.2d 742, 745 (7th Cir. 1971); *United States v. Deloney,* 389 F.2d 324, 325 (7th Cir. 1968). Here, however, the facts do not show unfairness. There was no evidence that the government intentionally delayed charging the defendant in order to gain a tactical advantage or for purposes of harassment. Compare *United States v. Marion, supra,* 404 U.S. at 325–326, 92 S.Ct. 455 (1971). The existence of the ongoing investigation justified the delay. Not only might the investigation have been adversely affected by the warning which an indictment would convey to those being investigated, but the safety of law-enforcement agents might also have been jeopardized.

■ The agents' delay in making the photographic identification, as distinguished from the delay in charging, is not justified by the existence of the ongoing investigation, and it would have been much better law-enforcement practice to have made that identification as soon as possible after the event. There are a number of factors, however, which weigh in favor of the reliability of the identification in the circumstances of this case. The drug sales were witnessed by, not one, as is often the case, see *Ross v. United States, supra,* 349 F.2d 210, but two undercover agents, both of whom, in their testimony at the trial, identified defendant as the seller. At least one of the agents had three close encounters with defendant during the course of the transactions. The period of seven months between the transactions and the trial was not inordinately long. The fact that the identification was made by law enforcement agents, who not only were presumably trained observers but who had reason to observe carefully at the time of the crime, is also of significance. Although, as defendant argues, neither agent found anything distinctive in the appearance of the offender, such as a scar or limp, which would aid in a later identification, the record does not show the existence of any such distinguishing features, as defendant's counsel acknowledged in oral argument. The failure of agent Banks to keep her written notes concerning the transactions, and minor inconsistencies between her account of the transactions and that of agent Lofton, are not of such significance as to render the identification inherently unreliable. Exercising as best we can that "delicate judgment based on the circumstances of [the] case" which it is our duty to exercise under *Marion, supra,* 404 U.S. at 325, 92 S.Ct. 455, we conclude that neither the pretrial nor trial identification was rendered inherently unreliable by delay and that the delay in charging defendant did not deprive him of due process.

II.

■ Defendant contends that his statements made at the time of his arrest were inadmissible because they were made without knowledge of his right to remain silent. Apart from the fact that one of the statements was elicited by defendant's own counsel on cross-examination, the argument is specious, because the statements were volunteered and were not responses to interrogation. *United States v. Hopkins,* 486 F.2d 360, 362 (9th Cir. 1973); *United States v. Crovedi,* 467 F.2d 1032, 1036 (7th Cir.

738

1972), *cert. denied*, 410 U.S. 982, 990, 93 S.Ct. 1510, 36 L.Ed.2d 178 (1973).

 Defendant also suggests that, though relevant, the statements were highly prejudicial, yet subject to an innocent explanation which defendant could not give at trial without waiving his right to remain silent. The explanation was that he had read about the indictment in a newspaper the previous week, was on parole for an earlier conviction, and expected his parole to be revoked. The statements were relevant, and we cannot say the District Court erred in determining that their probative value was not outweighed by the danger of unfair prejudice, see Fed.R. of Evid. 403, a balancing process in which that court has wide discretion, see *United States v. Ravich*, 421 F.2d 1196, 1204–1205 (2d Cir. 1970), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970).

### III.

The final issue is the adequacy of the jury instructions. Defendant argues that as a practical matter the sole issue at trial was that of identification, and that therefore it was error for the trial court to refuse to give the following instruction:

"The evidence in this case raises the question of whether the defendant was in fact the criminal actor and necessitates your resolving any conflict or uncertainty in testimony on that issue.

"The burden of proof is on the prosecution with reference to every element of the crime charged and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime charged."

The argument is based upon this court's recent decision in *United States v. Hodges*, 515 F.2d 650 (7th Cir. 1975), in which the court said:

"In cases . . . where the issue of identification is paramount, we define proper instructions to include an identification instruction, when it is tendered to the court, in addition to accurate instructions as to burden of

proof and the credibility of witnesses." *Id.* at 653.

The model instruction required by *Hodges* is that which appears in the appendix to *United States v. Telfaire*, 152 U.S. App.D.C. 146, 469 F.2d 552, 558–559 (D.C.Cir.1972).

We note at the outset that *Hodges* was not called to the attention of the trial judge in the case at bar. It had been decided only two weeks before the trial, and presumably neither the judge nor either counsel was yet aware of it.

 *Hodges* requires the giving of a *Telfaire* identification instruction "when it is tendered to the court." The defendant in the case at bar did not meet that requirement, because the instruction he tendered was not similar to the *Telfaire* model and was neither accurate nor appropriate. The first paragraph of the tendered instruction incorrectly told the jury, "The evidence . . . raises the question" of identity "and necessitates your resolving any conflict or uncertainty in testimony on that issue." There was no conflict or uncertainty in the evidence on the issue of identity. The government's evidence was that defendant was the seller of the heroin and defendant offered no evidence to the contrary. A trial judge does not commit error by refusing to give an inaccurate instruction. *United States v. Bessesen*, 445 F.2d 463, 468 (7th Cir. 1971), *cert. denied*, 404 U.S. 984, 92 S.Ct. 448, 30 L.Ed.2d 368 (1971); *Stewart v. United States*, 395 F.2d 484, 490–491 (8th Cir. 1968); *United States v. Kelly*, 349 F.2d 720, 759 (2d Cir. 1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966). In the absence of the tender of a proper instruction on a point, his failure to instruct on that point will not warrant reversal unless it "constitutes basic and highly prejudicial error." *United States v. Esquer*, 459 F.2d 431, 435 (7th Cir. 1972), *cert. denied*, 414 U.S. 1006, 94 S.Ct. 366, 38 L.Ed.2d 243 (1973), quoting *Franano v. United States*, 310 F.2d 533, 539 (8th Cir. 1962), *cert. denied,* 373 U.S. 940, 83 S.Ct. 1545, 10 L.Ed.2d 694 (1963). The failure to instruct complained of in the case at bar does not meet that test.

The jury, after hearing arguments of counsel for both sides which focused on the issue of identity, was instructed to "[c]onsider each witness's ability . . . to observe the matters as to which he or she has testified, and whether he impresses you as having an accurate recollection of these matters." Further instructions advised the jury that the essential elements of the offense which had to be proved beyond a reasonable doubt were: "First, that the defendant did on October 28, 1974 distribute heroin, and second, that the defendant did so knowingly and intentionally." Any reasonable jury could not have failed to understand that it could convict only if it found beyond a reasonable doubt that it was the defendant who committed the crime.

Affirmed.