**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jose Raul JUAREZ, Jr., Defendant-Appellant.**

**No. 76–1552.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1977.

Decided Aug. 15, 1977.

---

Martin H. Kinney, Merrillville, Ind., for defendant-appellant.

Richard L. Kieser, U.S. Atty., Fort Wayne, Ind., Fred W. Grady, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before CUMMINGS, PELL and TONE, Circuit Judges.

PELL, Circuit Judge.

A single count indictment dated January 21, 1976, charged Juarez with distributing heroin on May 9, 1974, in violation of 21 U.S.C. § 841(a)(1). A jury convicted. Asserting that substantial pre-indictment delay abridged his Sixth Amendment right to a speedy trial and cognate rights under Rule 48(b), Fed.R.Crim.P., and that the admission into evidence of testimony about a March 11, 1974, heroin sale by Juarez was improper and prejudicial, Juarez appealed.

The basic facts pertinent to the issues presented are not complicated. On March 6, 1974, Gustavo Vazquez, a Special Agent of the Drug Enforcement Administration assigned to the Chicago office, was introduced to Juarez by an informer who happened to be Juarez's uncle. On March 11, 1974, in Chicago, Juarez sold to Vazquez

somewhat less than an ounce of heroin.* On May 9, 1974, in Hammond, Indiana, Juarez sold to Vazquez another half ounce of heroin. Such, at least, was the testimony of Vazquez, corroborated in part by surveillance agents, and the sufficiency of this evidence to sustain the charge is not questioned here. Juarez testified that he had absolutely no recollection of any heroin dealings with Vazquez after March 11.

In October 1974, a Chicago magistrate's warrant led to Juarez's arrest for the March 11 sale. Charges based on the March 11 sale were ultimately dismissed, for reasons which do not clearly appear in the record. The first indication Juarez had that he would be charged with a May 9, 1974, offense came when he was indicted and arrested in January 1976.

Because Juarez does not assert a denial of his speedy trial rights flowing from the four months intervening between indictment and trial (more than five weeks of which resulted from his counsel's request for a continuance), his reliance on the Sixth Amendment is unavailing. In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the Supreme Court rejected a similar claim based on a three year pre-indictment delay, and squarely held that "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused' . . . ." *Id.* at 313, 92 S.Ct. at 459. The status of an "accused" is attained only upon "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . ." *Id* at 320, 92 S.Ct. at 463. *See also Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) (per curiam). This holding was reaffirmed only recently in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). As the facts of *Marion* and *Lovasco* reveal, a pending investigation does not make a potential defendant an "accused."

---

\* Juarez, who took the witness stand, admitted as much during the trial of this case, but asserted that he had done so only as an accommodation to his uncle, whom he characterized as the real seller in interest.

■ Nor does the fact that Juarez was arrested in October 1974 suggest a different conclusion, for the October arrest was for the separate and distinct offense embodied in the March 11 heroin sale. "The Speedy Trial Clause of the Sixth Amendment . . . is activated only when a criminal prosecution has begun by the filing of an indictment or information or a prior arrest of the offender *on the same charge.*" *United States v. Hauff,* 461 F.2d 1061, 1063 (7th Cir. 1972), *cert. denied,* 409 U.S. 873, 93 S.Ct. 203, 34 L.Ed.2d 124 (emphasis supplied). As this court stated in *United States v. DeTienne,* 468 F.2d 151, 155 (7th Cir. 1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973): "It would be absurd in the extreme if an arrest on one charge triggered the Sixth Amendment's speedy trial protection as to prosecutions for any other chargeable offenses." A different result might obtain where interrelated offenses are involved, "the crimes for which a defendant is ultimately prosecuted really only gild the charge underlying his initial arrest and the different accusatorial dates between them are not reasonably explicable . . . ." *Id.* at 155. This, however, is not that type of case. The only interrelationships between the separate and distinct March and May heroin transactions are that the same criminal statute was violated twice by sales to the same agent.

■ Likewise, and for the same reasons, Juarez's reliance on Rule 48(b), Fed.R. Crim.P., is misplaced. "The rule clearly is limited to post-arrest situations." *United States v. Marion, supra,* 404 U.S. at 319, 92 S.Ct. at 463 (footnote omitted); *accord, United States v. Lovasco, supra,* 431 U.S. at 789, n.8, 97 S.Ct. 2044.

■ Even where the Sixth Amendment and Rule 48(b) are not applicable, "the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that . . . pre-indictment delay . . . caused substantial prejudice to [the defendants'] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Mari-*

*on, supra,* 404 U.S. at 324, 92 S.Ct. at 465 (footnote omitted). Such actual prejudice does not automatically require dismissal; instead, "[t]o accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." *Id.* at 325, 92 S.Ct. at 465. "Thus *Marion* makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco, supra,* 431 U.S. at 790, 97 S.Ct. at 2049. Although Juarez's argument to this court was cast exclusively in speedy trial rubric, we address the possibility that the 20-month pre-indictment delay in this case denied Juarez a fair trial.

■ In doing so, we reject at the outset Juarez's suggestion that prejudice may be presumed as a matter of law whenever 20 months intervene between a crime and a charge. The *Marion* opinion's emphasis on "actual" and "substantial" prejudice "shown at trial" forecloses this argument. *See United States v. Joyce,* 499 F.2d 9, 19 (7th Cir. 1974), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306.

Juarez's claim of actual prejudice is limited to the fact that a 20-month pre-indictment delay made it difficult for him to reconstruct the events of May 9, 1974, and to find alibi witnesses, if any existed. His testimony, if credited, supports that claim to some degree. Although he never stated that he could not remember the events of May 9 in general, he did assert eleven times in what was transcribed as three pages of the record that he could not remember selling heroin to Vazquez on May 9 or any other time after March 11.

■■ This does not make out a particularly strong case of prejudice. A faded memory claim, while not outside the teachings of common sense, is inherently speculative as to its impact on a given case. *See United States v. Mallah,* 503 F.2d 971, 989

(2d Cir. 1974), *cert. denied*, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975); *United States v. Golden*, 436 F.2d 941, 943 (8th Cir. 1971), *cert. denied*, 404 U.S. 910, 92 S.Ct. 236, 30 L.Ed.2d 183. Moreover,

> [a] claim of faded memory, the veracity of which can rarely be satisfactorily tested, can be plausibly asserted in almost any criminal case in which the defendant is not charged within a few weeks, at most, after the crime. . . . If the limitation period for prosecution were measured by the length of the defendant's memory of routine events, few crimes could be prosecuted.

*United States v. Cowsen*, 530 F.2d 734, 736 (7th Cir. 1976), *cert. denied*, 426 U.S. 906, 96 S.Ct. 2227, 48 L.Ed.2d 831. *Cowsen* arose on a stipulation as to what the defendant's testimony would have been that makes the case qualitatively identical to this one. The delay in *Cowsen* was shorter, but this court noted that "[t]he possibility or likelihood of faded memory has not, however, in itself, been viewed as prejudice that requires dismissal of an indictment, despite delays of much longer than the four and one-half months shown here." *Id.* at 736 (citations to cases involving delays ranging from nine months to nearly six years omitted). We do not say that this 20-month delay with its attendant possibilities for the fading of Juarez's memory counts for nothing in the "delicate judgment" which *United States v. Marion, supra*, 404 U.S. at 325, 92 S.Ct. 455, requires of us. On the other hand, Juarez's claim as thus limited does not command the same concern as if he were asserting the unavailability of a critical piece of evidence or witness due to the delay.

In examining the essential fairness of the Government's 20-month delay in charging, it is important to state that the record, which we have examined, contains not a hint that the delay was "an intentional device to gain tactical advantage over the accused," *id.* at 324, 92 S.Ct. at 465, or was motivated by a desire to harass Juarez. Beyond this, the record is not as clear as it might be, for both Juarez and the Government declined the district court's invitation to present evidence on the issue of the delay, and the district court made no express finding on the Government's explanation therefor. Because a clear explanation was presented to the district court in the Government's opposition memorandum to Juarez's motion to dismiss, and because that explanation was supported by evidence taken at trial, we see no reason to remand for a hearing that Juarez has already declined and a finding that the record already plainly suggests. *Compare United States v. Lovasco, supra; and see id.*, 431 U.S. at 797, 97 S.Ct. 2044 (Stevens, J., dissenting).

The Government argues that the pre-indictment delay was due to the continuing nature of its investigation into drug offenses in the Hammond area. It asserts that attempts were made after Juarez's October 1974 arrest to enlist his cooperation in the investigation and that, when that cooperation proved not to be forthcoming, it was necessary and time-consuming to place a new undercover agent in Juarez's confidence. Both Vazquez and Juarez testified to the aborted cooperation agreement. Vazquez also testified that Juarez was not initially the prime target of the investigation, rather, one Miguel Moreno was, that Juarez told him (Vazquez) that his heroin source dealt in large quantities, and that he (Vazquez) desired even after the October arrest to continue the investigation. Juarez testified that Miguel Moreno was someone he had bought heroin from and that the October arrest, in fact, occurred at Moreno's house during a raid there. It is entirely reasonable to conclude from all of this that the Government sought to find other drug offenders with whom Juarez was involved (possibly conspiratorially), including Moreno, and attempted to use Juarez to do so, first by agreement, and later by insinuating another agent into his confidence. Nor must we blind ourselves to the fact, represented in the record of *United States v. Juarez*, 549 F.2d 1113 (7th Cir. 1977), an appeal from a different conviction argued before this panel on the same day as this case, that the Government's efforts bore fruit in December 1975, when sales involving Juarez and others not connected with

this case, but not Moreno, were made to Government agents. We do not think the Government's implicit assumption that it would be much more difficult to pursue leads through Juarez if he were under pending drug charges goes to the level of seeking "tactical advantage" or harassment.

In *United States v. Lovasco, supra,* the Supreme Court held "that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." 431 U.S. at 796, 97 S.Ct. at 2052. That holding does not entirely dispose of this case, for in *Lovasco* the 18-month investigation (which was rather minimal) concerned the very crime with which the defendant was charged. We see no reason, however, to reach a different result here. The *Lovasco* opinion emphasizes that "[i]n some instances, an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing [other] lawbreakers to justice." *Id.* at 793, 97 S.Ct. at 2050. This consideration is fully applicable where, as here, investigation is directed toward locating a defendant's confederates and associates in the very type of criminal activity— indeed, possibly in the very crime—for which the defendant was ultimately indicted. Moreover, as *Lovasco* also notes, further investigation may indicate that a defendant has low *culpability* notwithstanding legal *guilt* and may induce a discretionary decision not to prosecute. *Id.* Defendant's testimony in this case that his only and limited drug selling was done out of loyalty to his uncle would very possibly, if investigation had borne it out, have created just such a situation. *See id.* The fundamental differences which the Court found between investigative delay and that aimed at tactical advantage are largely, if not completely, present in a case like this one. For all of the reasons stated, Juarez's speedy-trial— due-process argument is rejected; the district court did not err in refusing to dismiss the indictment.

Without citation of any authority and in slightly more than one page of his brief, Juarez raises the issue that the court erred in permitting the Government to introduce evidence of a previous narcotics offense, being that pertaining to the sale to the same agent in Chicago on March 11, 1974. Juarez concedes the Government's right to introduce evidence of prior crimes in appropriate situations and with a proper instruction but objected here because the evidence of the prior offense was one of which he had been charged, "and which has been dismissed prior to the trial," characterizing the admission as being highly improper and not within the court's discretion under Rule 404.

Rule 404(b), Fed.R.Evid., states the rule for evaluating such claims, which rule was long recognized even before the Federal Rules were adopted:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ The defendant's principal argument is without substance. Rule 404(b) is not limited to evidence of other crimes which resulted in convictions, although a conviction no doubt facilitates proof of the other offense. The fact that charges on a prior crime are dismissed is without independent significance in applying Rule 404(b). *See United States v. Jones,* 155 U.S.App.D.C. 88, 476 F.2d 533 (1973).

■ Notwithstanding lack of urging of a secondary aspect of the present question, being mindful that "[e]vidence of a prior crime is always unduly prejudicial to a defendant," *United States v. Phillips,* 401 F.2d 301, 305 (7th Cir. 1968), we have on our motion considered in this case whether the proffered evidence has substantial relevance outweighing its potentially unduly prejudicial effect. *Id.* at 306. Rule 404(b) permits but does not require that such evidence be admitted; the district court must apply Rule 404(b) in conjunction with Rule

403 which allows the exclusion of otherwise admissible evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." This weighing process is primarily for the district court to perform; trial judges are much closer to the pulse of a trial than we can ever be, and "broad discretion" is necessarily accorded them in balancing probative value against prejudice. *United States v. Serlin*, 538 F.2d 737, 747 (7th Cir. 1976).

We first look at the contextual background in which the admission of the evidence pertaining to the March 11 Chicago transaction occurred. In a defense motion to dismiss filed some two months before the trial date, it was brought to the attention of the court (and, of course, the Government, if it was not already aware of the fact) that Juarez had been charged with selling heroin in Chicago on March 11, 1974. A copy of the complaint filed in connection with that charge was attached to the motion to dismiss. It was further stated that the same agent was involved in the March transaction and the later May transaction which was the basis of the present trial. It was also stated in the motion that the charge had recently been dismissed by the Government.

In his opening statement, the Assistant United States Attorney reviewed what he thought the evidence would show and referred to a conversation on March 6, 1974, between the undercover agent and Juarez about a possible sale of narcotics. He then indicated that on March 11, arrangements were made with Juarez to purchase heroin and "there was a meeting that took place between the confidential informant, in Chicago, Illinois, Agent Vazquez and the Defendant." No objection was lodged to these references to the events occurring in March.

Following opening statement and prior to the first witness going on the stand, the Assistant United States Attorney in colloquy with the court and opposing counsel stated the following:

May I ask one more thing? I anticipate another problem. In my opening state-ment I gave, and the evidence I intend to produce, it starts from a point when the Agent first met the Defendant and all the occurrences that took place up to the point of May 9. On one occasion, on the 11th of May, [Sic: March 11] they met in Chicago and a transaction took place, which I did talk about in my opening statement. The reason I talked about it was to show a common plan, scheme and motive. I am not going to go into the buy or the purchase, except to say it occurred, and go on to what happened later. That is what I did in my opening statement, I believe.

The court then inquired as to the amount of time between the two incidents. There followed a discussion of authorities that might be applicable and the judge observed that the testimony might *also* be relevant to knowledge and intent. The court indicated then that it would cross the bridge when it was reached. Defense counsel again, as he had in his earlier motion, advised the court that the Chicago charge had been dismissed. He did not, however, at that time specify any objection to the proposed testimony.

The first witness was the Government agent Vazquez. He testified that on March 6 with the confidential informant (the uncle of the defendant), he went to the Juarez home and was introduced to the defendant. He said he had a conversation with Juarez and that Juarez asked him how many ounces of heroin he wanted. The agent said that he wanted one ounce and they agreed on a price of $830.00. He further stated that he did not make any purchases that day, but before he left, Juarez said he would contact his uncle as soon as he had the ounce. The agent and the uncle then left. He then testified that on March 11 he received a telephone call and pursuant thereto he went to Chicago to purchase heroin from Juarez at the intersection of 22nd and Halsted streets. While there were a few technical objections to the agent's testimony during that which is summarized above, there was no objection to any of the testimony regarding the negotiations for purchase until the agent was

asked what he did after he arrived at the intersection. Defense counsel then asked for a bench conference at which he objected to the agent testifying as to the dealings in heroin in Chicago. He again pointed out to the court that the case had been dismissed in Chicago. In view of the damaging nature of the testimony, and the references thereto in the opening statement, regarding all that led up to the actual transaction, irrespective of whether the earlier negotiations constituted a cognizable offense, it might appear that the proverbial horse was at the point of objection well on its way to freedom.

The court called for a response from the Government which cited *United States v. Phillips, supra*, 401 F.2d 301; and *United States v. Fearns*, 501 F.2d 486 (7th Cir. 1974). The Government also relied upon Rule 404. The court observed that *Phillips*, which involved a heroin transaction, was fairly old. The court also commented that *Fearns* was a very good opinion and that while the result did not help the Government, the reversal was upon other grounds, and that the case did vest considerable discretion in the district court on the admission of other crimes. The trial court did not indicate at this point whether he was considering that part of *Fearns* dealing with intent or that part concerned with a plan, system, or scheme, both aspects of which are discussed hereinafter in this opinion. The court then indicated that it would admit the evidence to be accompanied both by an immediate and a final cautionary instruction. Upon completion of the testimony the judge instructed the jury that the testimony was admitted for a very limited purpose and was not admissible to prove or show that Juarez acted in conformity therewith. The evidence, the court repeated, "is admitted for the limited purpose of permitting you to determine whether or not it is any proof of motive or opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

In the final instructions to the jury the district court, without objection, apparently narrowed the admissibility theory by telling the jury that it must not consider the March evidence in determining whether Juarez did the act charged in the indictment, and that the jury must make that determination from the other evidence in the case, and that if and only if it is determined that Juarez did the act, the March evidence could be considered to shed light on "the state of mind or intent with which the accused did the act charged in the indictment."

Now turning to the authority for the admission as presented to the court, we note briefly *Phillips* as being of little help to either protagonist. There this court reversed, for although the earlier heroin transaction provided a supporting inference to the Government's case, the evidence lost most of its relevance because of the acquittal on the charge arising from the earlier transaction. 401 F.2d at 305. This court concluded therefore that there was an abuse of discretion in that the trial judge did not give effect to the acquittal. *Id.* at 306. Turning to *Fearns*, we note that the case more currently provides us with a review of the cases of this type in this circuit and the various aspects of the problem which have been considered. In that case, because a new trial was necessary on other grounds, the court considered the admissibility of the evidence of other crimes which the trial judge, as was essentially the case here insofar as the final limiting instruction was concerned, had found relevant as bearing upon the defendant's intent. The opinion in *Fearns* then pointed out prior authority to the effect that the unequivocal acts with which the defendant was charged made it unlikely they were done with innocent intent and therefore intent not being in issue it would be error to admit the testimony on that basis.

We do not conceive the acts involved in *Fearns* (the handing of four unendorsed checks payable to strangers to another person, taking her to the bank to cash them, and dividing the proceeds) to involve quite the same character of intent as that which may exist when the act of distribution of heroin takes place. The statute, 21 U.S.C. § 841(a)(1), expressly includes the require-

ment that the distribution be done "knowingly or intentionally." Further, in its opening statement the Government several times referred to its duty to prove this essential aspect of its case, concluding, "[i]n other words, the Government must prove beyond a reasonable doubt that the Defendant in this case did distribute a substance that contained heroin, and he did so knowingly and intentionally, not by accident or mistake, for example, in the case where he didn't know what it was, or he didn't intend to distribute the substance, he didn't know the substance was heroin."

In the area of drug traffic cases, this court has had no difficulty in finding that the knowledge and intent aspects were sufficiently involved to justify the admission of evidence of other transactions. Thus, in *United States v. Jones*, 438 F.2d 461, 466 (7th Cir. 1971), the court stated:

> Counts VIII and IX of the indictment charged the appellant with the knowing and fraudulent unlawful possession of cocaine in violation of 21 U.S.C.A. § 174. A § 174 offense requires proof of knowledge and intent. *United States v. Phillips*, 7 Cir., 375 F.2d 75; *United States v. Dillard*, 7 Cir., 376 F.2d 365, and *Aggers v. United States*, 8 Cir., 366 F.2d 744, 748–749. Thus the testimony concerning the [earlier] June 5, 1968 sale of cocaine was admissible to show knowledge and intent with respect to those counts.

Another facet of the present issue, however, is adverted to in *Fearns*, that of timing. "It has been suggested that, if there is doubt about whether intent is to be an issue, the admission of the evidence should be deferred until the defendant raises the issue." *Id.* at 491. Although, as it turned out, when the defendant took the stand he denied completely any participation in the May transaction, the Government here, as indicated by its opening statement, was quite aware of the significance of its burden of proof on knowledge and intent. The awareness, it is reasonable to infer, arose in part at least from the particular factual and familial background in which the transaction took place. The confidential infor-

mant who first introduced the Government agent Vazquez to the defendant was the defendant's uncle who had made the arrangements for the purpose of purchasing narcotics from Juarez. Without knowing what the defense would be, the Government might well have assumed that under these circumstances it would be met with a defense of entrapment. Alternatively, the defense might have taken the tack that Juarez was an innocent errand boy for his uncle. Indeed, Juarez testified, although it would have been scarcely a defense, that it was his uncle who was the source of supply in the March transaction and that he completed the sale so that the purchaser would not know that the uncle was the source.

■ Of course, the Government could have waited to see what the defense was as hindsight might suggest. Nevertheless, in our reading of *Fearns*, we note the use of the word "suggested," and the court's reference to the following quotation from 2 Wigmore, Evidence § 307 at 207 (3d ed. 1940): ". . . intent in virtually all offenses is material, and is therefore a part of the case to be proved in chief; and . . . unless the precise defence be disclosed in advance, the prosecution may in fairness assume that Intent may come into issue." *Id.* at 491. Further, we note that defense counsel made no opening statement which might have indicated the extent to which knowledge or intent might have been in issue. We find it difficult in the circumstances of this case, insofar as knowledge and intent are concerned, to say that the district court abused its discretion by permitting the Government to put in its factual case in a chronological sequence starting with the introduction to Juarez, the subsequent March sale in Chicago, and winding up with the charged sale in Indiana.

Before leaving this aspect of the case, however, we note a minor complication. At oral argument in this court, the Government attorney, who had also been trial counsel but was apparently unmindful of the judge's final limiting instruction confining the scope of the evidence to state of mind or intent, when pressed with questions

from the bench stated that it was not the Government's position that it was intent that justified admissibility. While we do not quite comprehend the reason for this possibly unnecessary concession, we merely note that if reversal were required it would be the district court which was being reversed and not the Assistant United States Attorney. Also, as has been previously mentioned herein, the Government counsel had indicated to the court in advance of the testimony that the evidence was to show a common plan, scheme, and motive.

 In any event, reversal is not required here because in our opinion the challenged evidence was otherwise admissible. We are not unmindful that the court's final instruction limited the jury's consideration of the evidence by stating they could not consider it at all unless they first found beyond a reasonable doubt from other evidence in the case, standing alone, that the accused did the act charged in the indictment and then, and only then, the jury could consider evidence as an earlier alleged offense of a like nature in determining the state of mind or intent with which the accused did the charged act. The court further pointed out that the jury might but was not obliged to draw the inference that in doing the act charged the accused acted willfully and with specific intent. We nevertheless, if the evidence was admissible for other, or additional reasons, would find no basis for reversing simply because of the final instruction's limitation to state of mind and intent. *Compare Fearns, supra,* at 491, where the court in reversing and remanding for other reasons, in a situation in which the evidence on the first trial had been admitted with a limitation to intent, recited other bases of relevance for the admission of the challenged evidence. In sum, we would regard a reversal as being a miscarriage of justice to the Government if a reversal were to result from the admission of evidence which we regard as relevantly admissible but which was relevantly admissible for reasons over and beyond that which the trial court had specified in one of its instructions.

We note that, at the time the testimony came in, the limiting instruction recited as purposes for admission all of the ones set forth in Rule 404(b) including "identity." It appears to us that the evidence of the March sale bore directly on the issue of Vazquez's ability to identify Juarez. *See United States v. Jones, supra,* 476 F.2d at 536; *Robinson v. United States,* 148 U.S. App.D.C. 58, 459 F.2d 847, 855–58 (1972).

Returning again to *Fearns,* the defendants there as is the case with Juarez denied the doing of the acts charged. "[T]he government was entitled to resort to proof of 'a plan or system as tending to show the doing of the act.'" [Citations omitted.] "The object of such proof 'is not merely to negative an innocent intent at the time of the act charged, but to prove a pre-existing design, system, plan, or scheme, directed forward to the doing of the act.'" *Id.* at 491.

*United States v. Jones, supra,* 438 F.2d at 466, approves the same rationale of admission. Some of the statutes charged to be violated in that case did not require intent. We note the similarities factually between the present case and *Jones*:

The June 5th sale of cocaine was a similar offense, proximate in time, involved the same three individuals—the appellant Alvin Jones, Ida Hunter, and agent Rhodes—and an almost identical *modus operandi* was employed. It bore a singular strong resemblance to the pattern of the offense charged. And, it was so related to and connected with the crime charged that the proof of the one tended to corroborate the proof of the other. In our opinion the evidence complained of was admissible with respect to the § 4705(a) offense charged in Count VII although on a ground different from that which made it admissible as to § 174 offenses for the purpose of showing the element of knowledge and intent required by the latter section. And, the District Court did not abuse its discretion in admitting the evidence concerning the June 5th sale over the appellant's objection.

The same reasoning has been adopted more recently by this court in *United States v. McCord*, 509 F.2d 891, 895 (7th Cir. 1975), *cert. denied*, 423 U.S. 833, 96 S.Ct. 56, 46 L.Ed.2d 51, which involved the same narcotics statute under which Juarez was charged.

In sum, it appears to us that if any result flowed from the narrowing limitation of the scope of admissibility contained in the court's final instruction it was to the advantage of the defendant.

For the reasons herein set forth we conclude that the defendant was afforded a fair trial and the judgment of conviction should be and is affirmed.

Affirmed.

TONE, Circuit Judge, concurring.

If it were not for the Supreme Court's recent decision in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), I would have thought it appropriate to remand to the District Court for a determination of the reasons for the delay in charging. I agree that this is at least as strong a case for the government on the delay issue as that one was, and therefore concur in this court's resolution of that issue.

On the admissibility of the prior crime, I agree that it was not error, in the circumstances of this case, to admit the evidence of the earlier transaction for the purpose of proving intent, and to do so during the government's case in chief. There may be narcotics cases, however, in which it is unlikely under the circumstances that intent will be in issue, and therefore I am unwilling to subscribe to language in the court's opinion that may be interpreted as indicating that the door is open wider for the admission of such evidence in narcotics cases than it is in other cases. Also, when the evidence is offered to prove intent, I think that its admissibility in the government's case in chief should depend on whether intent is likely to be a contested issue in the case. If the court's opinion is intended to intimate otherwise, I cannot agree.

Finally, I agree with the court that in this case the evidence is also admissible for purposes other than to prove intent, and that the defendant was the beneficiary of the instruction limiting consideration of the evidence to its bearing on intent. It would of course have been a different matter if the evidence had been admissible to prove other matters but not to prove intent.

I concur in the judgment and, except as indicated by the foregoing reservations, in the court's opinion.