**John David ROBINETTE a/k/a Johnny David Robinette, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–90–267–CR.**

Court of Appeals of Texas, Eastland.

Sept. 19, 1991.

Steven R. Herod, Ranger, for appellant.

Leslie B. Vance, Crim. Dist. Atty., Eastland, for appellee.

OPINION

McCLOUD, Chief Justice.

The jury found appellant guilty of murder and assessed his punishment at confinement for 75 years. We reverse and remand.

Appellant contends in his first point of error that the evidence is insufficient to support the verdict. In deciding a challenge to the sufficiency of the evidence, we must review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234 (Tex.Cr.App.1989).

The record reflects that, shortly before the killing, appellant; the deceased, Richard Louaine "Country" Williamson; and Lisa Rose lived together at appellant's house. At the time of the shooting, the deceased and Rose had moved and were living together. After Rose moved from appellant's house, appellant placed her clothes in the yard. A controversy developed over Rose' clothes.

Martin L. Robinette, appellant's brother, testified that, on April 25, 1990, appellant and Rose came to his house driving the deceased's pickup. They told Martin Robinette that "they" needed his help because, "We killed Country." Regarding the body, Martin Robinette testified:

Q: Did they tell you about throwing his body in the cellar?

A. No. I asked them—I said, "Are you sure he's dead?" And she said, "Yes, he's dead." And she said, "He's shot five, six times." And they said—I said, "Well, where is the body at?" They said, "Out at the house." I said, "In the house or where?" And they said, "No. It was in the storm cellar."

The body of the victim was found in the storm cellar behind appellant's house. The deceased had been shot six times. Four times in the back, once in the back of the head, and once in the right earlobe. The doctor who performed the autopsy testified that the shot to the back of the head occurred after the victim's head had been wrapped with duct tape.

■ Elton Jackson McCoy, a deputy sheriff, testified that, during a conversation between the officer and another prisoner while he was transporting appellant in an automobile, appellant started talking about his case and stated that if Deputy Sheriff Ben Sancillo and the district attorney had kept "Country away from his house ... he would never had to kill him."

David Franklin, a deputy sheriff, testified that appellant told him at the scene of the shooting that "it was self-defense and that Lisa was the one that shot him."

Franklin stated that appellant and Rose told him that the weapon that was used to kill the victim was in Rose' purse in the victim's pickup. Mark Wayne West identified the pistol taken from Rose' purse as the pistol that he delivered to appellant shortly before the shooting. Neither appellant nor Rose testified. The evidence is sufficient to support the conviction. Appellant's first point of error is overruled.

In the second and third points of error, appellant urges that the trial court erred in overruling his motion for mistrial when testimony was presented before the jury concerning extraneous offenses by appellant.

West, a witness for the State, testified that he was a friend of appellant. He was aware that appellant and Rose were having trouble and that Rose was living with the deceased. West was at appellant's house on April 24, 1990, when Deputy Sheriff Sancillo and the district attorney came out to appellant's house regarding the controversy over Rose' clothes. Appellant learned that the deceased and Rose were coming to his house to pick up the clothes. West stated that appellant was concerned about his safety and asked to borrow West's pistol. The witness testified that he did not want to give appellant his pistol but decided to loan the gun to appellant after appellant told him that when West came "back I may be dead."

During the State's examination of West regarding why Rose left appellant and started living with the deceased, the following occurred:

Q: And you don't know why she left the defendant to go back to Country?

A: They got into an argument. John accused her of sleeping with his brother and they had a fight.

Q: So she just left?

A: And she told me that John held a knife at her throat and then held a knife at her dog's throat.

The court sustained appellant's objection. Appellant did not request an instruction to disregard or move for a mistrial. Immediately thereafter, the prosecutor asked West if appellant had a "macho attitude about

people." The witness answered that he did and that that was one of the reasons he was reluctant to let appellant have his gun. The prosecutor then asked:

Q: Did he ever brag about anything that he did in a macho sort of fashion?

A: Yes, sir.

Q: And what was that in particular?

A: He bragged he killed a police officer one time.

Appellant's objection was sustained. The trial court instructed the jury to disregard the remark and overruled appellant's motion for mistrial. Appellant then asked the court to instruct the jury not to consider the previous statement of the witness regarding appellant holding a knife at Rose' throat and at her dog's throat. The trial judge so instructed the jury and overruled appellant's motion for mistrial.

 The rule is well established that error in the admission of improper testimony is usually cured by the trial court's instruction to the jury to disregard. *Coe v. State*, 683 S.W.2d 431 (Tex.Cr.App.1984). The error will be rendered harmless except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds. *Kelley v. State*, 677 S.W.2d 34 (Tex.Cr.App.1984).

■ We hold that the instruction to disregard the testimony that appellant bragged that he once killed a police officer did not cure the error. See *Williams v. State*, 643 S.W.2d 136 (Tex.Cr.App.1982). The witness testified that he was told by Rose that appellant held a knife at her throat and at her dog's throat. This testimony was inadmissible. The court sustained appellant's objection. The prosecutor then immediately returned to the forbidden extraneous offense area and elicited before the jury testimony that appellant had bragged about killing a police officer. We hold that the question and answer were clearly calculated to inflame the minds of the jury and were of such character as to suggest the impossibility of withdrawing

the impression produced on the jurors' minds.

We cannot conclude beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *Harris v. State*, 790 S.W.2d 568 (Tex.Cr. App.1989); TEX.R.APP.P. 81(b)(2).

The judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial.