Terry Joe BISHOP, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 09–91–129 CR, 09–91–130 CR.

Court of Appeals of Texas,
Beaumont.

Sept. 16, 1992.

Rehearing Denied Oct. 8, 1992.

Thomas D. Glenn, Conroe, for appellant.

Peter C. Speers, Dist. Atty., Kathleen Hamilton, Asst. Dist. Atty., Conroe, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

These consolidated appeals come to us from convictions for the felony offenses of Burglary of a Habitation and Aggravated Sexual Assault (three counts). Following its guilty verdicts on all three counts of Aggravated Sexual Assault and the Burglary charge, the jury assessed appellant's punishment for each of the four offenses at confinement for life in the Institutional Division of the Texas Department of Criminal Justice, and, in each case, a fine of $10,000. The jury also made an affirmative finding of the use or exhibition of a deadly weapon by appellant during the commission of the offenses. The judgments indicate that the sentences are to run concurrently. Although appellant raises five points of error on appeal, our discussion of appellant's first point will be dispositive of the causes before us.

■ We note at the outset that appellant does not complain of the sufficiency of the evidence to sustain his convictions. Indeed, although both parties correctly characterize this case as being circumstantial in nature, we have not been presented with such strongly incriminating evidence in quite some time. Appellant presents us with his first point of error as follows:

> The trial court erred in admitting evidence of appellant's sexual proclivities and practices pursuant to Rule 404(b), Texas Rules of Criminal Evidence.

The evidence of these "proclivities and practices" was elicited by the State, over appellant's strenuous objection, from appellant's ex-wife, C.S. This occurred as the State cross-examined Ms. S. during appellant's case-in-chief. Ms. S.'s testimony was as follows:

Q. (the State) Ms. [S.], you are aware already of what we're about to go into and I apologize. I know this might be embarrassing, but I think I need to ask you this. During the course of your relationship with Terry Joe Bishop, did he like to engage from time to time in anal intercourse?

A. (Witness) Yes, sir.

Q. During the course of your relationship in order to satisfy himself, did Terry Joe Bishop ever ask you or require you to perform sexual acts such as fondling on yourself?

A. Yes, sir.

MR. SPEERS (the State): Pass the witness.

MR. GLENN (for appellant): Nothing further, Your Honor.

MR. SPEERS: Excuse me. I have one more question, Your Honor.

THE COURT: All right.

(BY MR. SPEERS:)

Q. Was Terry Joe Bishop during the course of your relationship capable of performing sexually for an extended period without ejaculating?

A. Yes, sir.

MR. SPEERS: I will pass the witness now.

MR. GLENN: I pass the witness, Your Honor.

The record reflects that prior to the admission of the above testimony before the jury, a hearing took place out of the jury's presence in which appellant's counsel objected to the admission of the testimony based upon his understanding of the law of relevance under TEX.R.CRIM.EVID. 404(b),[1] as well as the fact that the testimony, even if relevant, should be excluded as more prejudicial than probative, citing Rule 403. The State responded that Ms. S.'s testimony did not consist of an "extraneous offense" as contemplated by Rule 404(b); that the testimony was admissible as "character evidence;" that because the key issue in the case was identity and that appellant's defense raised the possibility of another man having committed the crimes, that the State was allowed to "rebut" such evidence to show that appellant committed the crimes against the victim; and that Ms. S.'s testimony was clearly relevant, and therefore admissible, under Rule 401.

Texas Rules of Criminal Evidence 401, 403, and 404(b) provide the following:

Rule 401: "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Rule 403: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Rule 404(b): **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

It is virtually conceded by both parties that the sole issue in the trial was the identity of the perpetrator of the brutal acts committed against the victim. The victim testified that an unknown perpetrator entered her house without her permission during the early morning hours of September 6, 1990, threatened her life and the lives of her children, and sexually assaulted her orally, vaginally, and anally at knife-point for approximately one to one and one-half hours without ejaculating, and in a very violent and brutal manner. The victim also testified that at one point during the attack, the perpetrator forced her to masturbate herself in order to show him what made her feel good. The victim, however, could not identify the perpetrator as he wore some sort of stocking over his face and no lights were turned on in the victim's house at any time during this predawn attack.

With regard to the relevance of the testimony complained of by appellant, we find that based upon the record before us the testimony was relevant. The fact that direct evidence of appellant having perpetrated the crimes in question was totally lacking at the end of the State's case-in-chief, and the fact that appellant's defense raised the issue of a person named "Stringer" as the perpetrator, caused Ms. S.'s testimony to be relevant under Rule 401 as it had the tendency to make the existence of a fact

---

1. All subsequent references to "Rule ——" refer to the Texas Rules of Criminal Evidence unless otherwise noted.

(appellant as the attacker) more probable than it would have been without it. However, although relevant, Rule 404(b) provides that such evidence is not admissible in order to show that an accused acted in conformity with extraneous "crimes, wrongs, or acts." *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Crim.App.1991) (opinion on rehearing). Rule 404(b) has been interpreted as permitting such evidence of extraneous acts of an accused to be admitted where, among other things, the *identity of the perpetrator* is at issue, because such evidence is relevant beyond its tendency to prove the character of a person to show that he acted in conformity therewith. *Id.* at 387. *Montgomery* provides, however, that such "identity" extraneous act evidence is admissible subject to the trial court's discretion to exclude it if its probative value is substantially outweighed by the danger of unfair prejudice as required under Rule 403. *Id.* In the instant case, therefore, the question we must answer is whether Ms. S.'s testimony, although clearly admissible under Rule 401 and the "identity" exception of Rule 404(b), was nevertheless inadmissible under Rule 403 and the standards announced in *Montgomery* and relevant case law.

We begin our attempt to answer the question with a look at the case of *Beets v. State*, 767 S.W.2d 711 (Tex.Crim.App.1988) (opinion on rehearing), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989), one of the latest in a long line of cases that address the issue of the use of extraneous offense or misconduct in cases where identity is in dispute. The Court in *Beets* discussed this type of evidence as follows:

> Even though the question of identity was disputed, the extraneous matter may still be inadmissible unless there are distinguishing characteristics common to both offenses such that the accused's acts are earmarked as his handiwork; his "signature" must be apparent from a comparison of circumstances in both cases. See *Collazo v. State*, 623 S.W.2d 647 (Tex.Cr.App.1981); see also *Collins*

*v. State*, 577 S.W.2d 236 (Tex.Cr.App. 1979); *Buckner v. State*, 571 S.W.2d 519 (Tex.Cr.App.1978) (on rehearing); *Ransom v. State*, 503 S.W.2d 810 (Tex.Cr. App.1974).... While admission of the evidence was inherently prejudicial due to the posture of the appellant, the same may be said of any such "signature" evidence which is probative of a crime for which a criminal defendant stands charged. Given the facts of the case before us, the fact that appellant raised an issue of identification during trial, and the high degree of similarity between offenses, the probative value of the extraneous evidence outweighs its prejudicial or inflammatory effect.

*Beets, supra* at 740–741.

 Since such a degree of similarity to the point of "signature" is required when identity is the issue at bar, this, coupled with the fact that sexually related misconduct is inherently inflammatory, *Montgomery, supra* at 397, should cause a trial court to engage cautiously in its Rule 403 balancing test when presented with such evidence. In the instant case, an examination of Ms. S.'s testimony shows almost a total lack of anything that could be remotely considered as a "signature" of the appellant. The State's questions were very broad-based and generalized. Terms such as "the course of your relationship," "like to engage from time to time," "ever ask or require you to perform sexual acts such as," and "capable of performing sexually for an extended period of time" were, for whatever reason, used by the State in questioning Ms. S., with Ms. S.'s only response being an unelaborated, "Yes, sir." Clearly, without any "signature"-type testimony from Ms. S., the prejudicial effect of the evidence was not substantially outweighed by its probative value.

 We take exception with the State's characterization of Ms. S.'s testimony as admissible under the Rules of Criminal Evidence as evidence of appellant's sexual habits. In citing us to Rule 406 which deals with habit and routine practices,[2] the

_____

2. Rule 406 states: Evidence of the habit of a person or of the routine practice of an organiza-

State provides no case law interpreting the rule. We must admit that our research turned up no Texas cases in which Rule 406 was significantly discussed. We did find, however, federal case law dealing with an identical provision in the Federal Rules of Evidence.[3] In *Jones v. Southern Pacific R.R.*, 962 F.2d 447 (5th Cir.1992), the Court provides us with the following discussion of "habit" evidence:

> Jones urges that the evidence was admissible under Rule 406 to show that Haley had a habit of operating trains negligently. Habit evidence is superior to character evidence because the uniformity of one's responses to habit is far greater than the consistency with which one's conduct conforms to character. *Reyes [v. Missouri Pac. R. Co.]* 589 F.2d [791] at 794 [(5th Cir.1979)]. Evidence of habit is not lightly established, however. To offer evidence of a habit, a party must at least demonstrate a "regular practice of meeting a particular kind of situation with a specific type of conduct." *Id.* In *Reyes*, we held that four prior convictions for public intoxication spanning a three and one-half year period were of insufficient regularity to rise to the level of habit evidence.

*Jones, supra* at 449.

In the instant case, the record reflects that Ms. S.'s relationship with the appellant was one of at least eleven years. The State made no attempt to show when their sexual relationship began, the frequency of such relations, or the frequency of the specific acts in question. *Jones* places a reasonable burden on the proponent of such "habit" evidence. We find no evidence in the statement of facts that "habit" was one of the purposes for which the State offered Ms. S.'s testimony, but even if it was, the State failed to meet the burden placed upon it as discussed in *Jones*.

█ Finally, we also take exception to the State's assertion that appellant "wrongly described the sexual practices in

the testimony at issue as evidence of an 'extraneous offense,' 'extraneous misconduct,' and as the 'crime, wrong, or act' described in Rule of Evidence 404(b)." The State contends that there is no evidence of a violation of the penal statutes or misconduct being committed because "anal intercourse between husband and wife, asking your wife to fondle herself, and being able to perform sexually for more than an hour without ejaculating are neither 'extraneous offenses,' nor 'misconduct,' nor 'evidence of other crimes, wrongs, or acts.'" While the State is correct in that none of the above acts engaged in between a consenting female and a consenting male are proscribed by law, TEX.PENAL CODE ANN. sec. 21.01 (Vernon 1989) defines "any contact between any part of the genitals of one person and the mouth or anus of another person" as *"deviate* sexual intercourse." (emphasis ours). Thus, the State of Texas still officially considers consensual, heterosexual anal intercourse as abnormal. Such an act would certainly rise to the level of at least "misconduct" by Penal Code standards.

At any rate, the State's contentions miss the crux of Rule 404(b) which is an attempt to codify the longstanding rule that an accused will not be tried for being a criminal in general nor be tried on his reputation or character. The plain language of Rule 404(b) does not permit so narrow an application as the State places on it.

█ Having found trial error, TEX. R.APP.P. 81(b)(2) requires that we examine the proceedings to determine if, beyond a reasonable doubt, the error made no contribution to the conviction. We recognize at the outset that the proper application of Rule 81(b)(2) *mandates* reversal unless the appellate court can reach the above referenced conclusion. *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App.1989). Furthermore, as the reviewing court, we are obligated to examine the entire record in a neutral, impartial and even-handed manner

---

tion, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

3. *See,* Federal Rules of Evidence 406.

and not in the *Jackson v. Virginia*[4] "light most favorable to the verdict...." *Harris, supra* at 586. As the *Harris* Court points out, "A review of the evidence in this manner is necessary because, for example, an error can be harmful when it has the effect of disparaging a defense, whereas if there is no defense the error could have been harmless." *Id.* Recall that appellant, in the instant case, did present a defense.

The *Harris* Court's treatise-like discussion of Rule 81(b)(2) further states that the reviewing court should not determine the harmfulness of an error simply by examining whether there exists overwhelming evidence to support the appellant's guilt, but should focus on the integrity of the process leading to the conviction. *Harris, supra* at 587. The *Harris* Court structures the inquiry as follows:

> Consequently, the court should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court (sic) must also determine whether declaring the error harmless would encourage the State to repeat it with impunity.

*Id.*

In the instant case, the source of the error was the State and its insistence on the need for Ms. S.'s testimony in the face of evidence of another possible perpetrator. The nature of the error was the admission, over timely objection, of "inherently inflammatory," inadmissible character conformity evidence. Its emphasis by the State initially took the form of a reference made in the State's opening argument to the jury, "He had to be drunk like the Defendant was and a real mind boggler was he also had to have the same sexual dysfunction and proclivities as the Defendant." The error was further emphasized twice in the State's final argument to the jury, the last words the jury heard before deliberating guilt or innocence:

(By the State)—Well, you heard what the expert said and I tell you what, we put those people on because Mr. Glenn would have put them on if he we (sic) hadn't. We put them on exactly for the purpose of showing you that they tried everything. It was just a happenstance that because of Terry Joe Bishop's peculiar sexual dysfunction that there was no semen evidence to be analyzed or maybe we would have had a lot easier job putting this case together.

....

(By the State)—You heard from C____ R____ that the perpetrator in this assault against her was able to continuously sexually assault her for something approaching an hour and a half without ever ejaculating. That is Terry Joe Bishop. I'll call that, I think the word Tom used was "stamina" (indicates). You heard from some of things that were done to Terry Joe Bishop—I mean, to C____ R____, that's the kind of stuff that Terry Joe Bishop is into. We will just call that "sex preference" (indicates).

In addition, the record reflects that the portions of the State's final argument where the court reporter placed the term "(indicates)" referred to the fact that the prosecutor was writing the immediately preceding word or phrase on a blackboard for the jury to see. The above indicates that the State's emphasis on the tainted evidence was significant.

In considering how much weight a juror would probably place upon the error we are faced with the fact that there was no direct testimony of the perpetrator's identity, so any direct evidence of some general, unenumerated sexual practices of appellant that happened to have some similarity to the acts inflicted upon the victim cannot be said to be inconsequential.

Finally, while in no way attempting to impugn the integrity of the prosecuting attorneys throughout the State of Texas, holding such error harmless under the circumstances in the record before us could be interpreted as a signal to even the most

---

**4.** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

well-intentioned prosecutor that, given the inherent subjectivity of harmless error analysis, *see, Harris, supra* at 585, any alleged perpetrator of such a repulsively violent crime deserves to be prosecuted as aggressively as the "law allows." We cannot deny nor fault this type of prosecutorial rationalization, but neither can we permit this Court to be an indirect participant in it. We conclude, therefore, that we cannot say, beyond a reasonable doubt, that the erroneous admission of the testimony of Ms. S. did not lead to appellant's conviction. Appellant's first point of error is sustained, all of the judgments are reversed, and the causes are remanded to the trial court for a new trial or trials consistent with this opinion.

REVERSED AND REMANDED.

BROOKSHIRE, Justice, dissenting.

This dissent is respectfully filed. The Court's opinion reverses the judgment on the appellant's first point of error. The first point of error is set out in the majority opinion. The other opinion points out that the appellant makes no complaint of the sufficiency of the evidence to sustain his convictions. As well, the Court has decided that the challenged evidence is definitely relevant. Even though this evidence is cogently relevant, the Court reverses the judgment because of its admission.

The resulting reversal of the judgment is based upon a minute part of the evidence and testimony of the appellant's ex-wife, Ms. S. The ex-wife was recalled to the stand by the defense and testified during the appellant's case-in-chief.

The objected-to testimony is comprised of three questions and three answers. Simply summarized, the questions to the ex-spouse were: did the appellant like to engage from time to time in anal intercourse; did the appellant require her to perform sexual acts such as fondling on herself; was the appellant capable of performing sexually for an extended period of time without ejaculating. The answer to all three questions was "yes". The time taken was about a minute or less. Similar sexual activities and performances were testified to at length by the victim. She swore that her assailant acted and performed in a very similar manner.

The evidence of the similar acts was not admitted until after the defendant had raised the defensive issues of alibi and that a third person committed the brutal acts. These matters came before the jury near the very end of the first phase of the trial. Because of the defensive stratagems, this testimony became more than ordinarily relevant and needful to the prosecution. At the time this evidence came before the jury, its relevancy and its probativeness far outweighed any unfair prejudicial effect.

The appellant claimed no surprise concerning her testimony. Appellant failed to request any limiting instruction. *See Plante v. State*, 692 S.W.2d 487 (Tex.Crim. App.1985). Importantly, there was other evidence that placed the appellant at the scene of the indicted offense. The record reflects that black walking shorts belonging to the appellant and a certain card, being a "Declaration of Love", belonging to the appellant was left at the scene. Appellant's point of error avers that the trial court erred in admitting evidence pursuant to TEX.R.CRIM.EVID. 404(b) and that the said Rule 404(b) was violated. The parties conceded that a paramount issue in the trial was the identity of the perpetrator of the very brutal acts committed against the victim. The challenged testimony was directly relevant to identity and was clearly admissible as rebuttal to appellant's defenses.

Evidence of "other crimes, wrongs, or acts" may be admissible if this same evidence has relevance apart from its tendency to prove the character of a person in order to show that he or she acted in conformity therewith. The record reflects that the State had a right to introduce such evidence where it logically served, as here, to make more probable, rather than less probable, an elemental fact. The elemental fact here being the issue and fact of identity. Evidence of evidentiary facts that inferentially leads to an elemental fact may be admissible. TEX.R.CRIM.EVID. 401, 404(b). The Court of Criminal Appeals significantly held in *Montgomery v. State*, 810

S.W.2d 372 (Tex.Crim.App.1990) (Opinion on Rehearing on Court's own Motion) that illustrative of the permissible purposes for which evidence of other crimes, wrongs, or acts may be put before the jury are proofs of such matters as motive, opportunity, intent, preparation, plan, knowledge, *identity,* or the absence of mistake or accident.

Thus, extraneous offenses and acts, and the evidence thereof, may logically serve any of the above listed purposes. Such evidence is relevant beyond its tendency to prove the character of an accused. Therefore, the testimony of Ms. S. is clearly admissible subject only to the trial court's discretion to exclude the same if, but only if, its probative value is substantially outweighed by the danger of *unfair* prejudice. All evidence introduced against an accused if material to an issue of the case (and here identity was an important issue in the case) tends to prove guilt and is prejudicial. The operative prejudice must be clearly *unfair.* Evidence is *unfairly* prejudicial when it tends to have some adverse effect upon an accused beyond tending to prove a relevant fact or issue. Hence, no operative, *unfair* prejudice exists.

The *unfair* prejudicial effect may be created by the tendency of the evidence to prove some *adverse fact that is simply not in issue.* That is not the situation in the case before us. Or, the prejudicial effect may arise from evidence that unfairly excites emotions against the defendant. But these are questions to be decided by the trial court in the use of discretion. Simply put, a prejudicial effect does not constitute the showing of *unfair* prejudice. Basically, *unfair* prejudice means an undue tendency to suggest a decision of guilt on an improper, unlawful basis.

Intermediate appellate courts should afford trial courts reasonably efficacious discretion to admit or to exclude evidence from the jury's consideration. If the trial court determines that the other crime, wrong, or act has relevancy apart from character conformity and that it tends to establish some elemental fact such as identity or intent, the same is admissible. If

this evidence rebuts a defensive theory, the same is admissible before the fact-finders.

It is significant that in *Montgomery, supra,* the Court pointed out in its opinion on the motion for rehearing that upon a timely request the trial judge should instruct the jury that the evidence is limited in purpose. No limiting instruction was requested. *See Plante, supra.*

The ultimate determination to be made by the trial court is whether the danger of undue, *unfair* prejudice substantially outweighs the probative value of the evidence in view of the availability of other means of proof. In the case before us the assailant wore a face mask and the trial court correctly decided that other means of proof under this unique record were not realistically available. A factor to consider is the strength of the proponent's evidence to show that the accused, in fact, *committed the extraneous conduct.* Here the State clearly showed that through the testimony of the ex-wife of the appellant. The challenged evidence does not divert the attention of the fact-finders from the indicted offense. Finally, an important consideration is how great is the proponent's need for the extraneous transaction evidence.

In view of the masking of the assailant and in view of the defense that a third person may have committed these brutal acts, the proponent's need is clearly demonstrated. The three final inquiries are: (1) does a proponent have other available evidence to establish the fact of consequence such as identity; (2) if so, how strong is the other evidence; and (3) is the fact of consequence related to an issue in the dispute. The answers to these three inquiries are in favor of the proponent because of the masking of the assailant and the fact that the prosecution's case is admittedly circumstantial according to the opinion of the majority. *Montgomery, supra,* at 390.

And under this record the trial court must be granted a reasonable amount of leeway to decide whether such evidence does, in fact, serve a legitimate purpose other than character evidence. The concept of character evidence and the issue of identity are meaningfully different. Con-

sidering the various factors and the circumstances of this particular case, the trial court should and must be given latitude to either exclude or, on the other hand, particularly in view of the presumption of admissibility of all relevant testimony, not to exclude misconduct evidence as the trial judge sees fit. It has been established that so long as the trial court thus operates within the boundaries of its discretion, then an intermediate appellate court should not disturb its decision, whatever that decision may be. *See Templin v. State*, 711 S.W.2d 30 (Tex.Crim.App.1986). The trial bench did not abuse its discretion.

Justice Clinton, writing the opinion on the motion for rehearing in *Montgomery*, *supra*, stated: "We also measure the trial court's ruling whether to exclude evidence of 'other crimes, wrongs, or acts' under Rule 403 by an abuse of discretion standard."

The prosecutor announced to the court out of the hearing of the jury that he intended to cover certain matters. He took the position that these matters were now clearly admissible since the defendant had brought up the theory and defense in the case that some individual other than the defendant had committed these brutal acts.

The State and trial court properly analyzed the challenged evidence as being admissible because of the accused's preference and demands for anal intercourse, his preference and requirement that his sex partner fondle herself in front of him, the practice of withholding ejaculation either forever or for a period of time from one hour to one hour and a half's duration establishes the relevancy and the admissibility. The similarity test was met. Those acts, demands, and practices were inflicted on the victim herein. Hence, those similar acts and demands with the prior wife are admissible.

It is interesting to note that the concept of mirror image crimes or signature crimes are not referred to in the ten factors discussed in 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR, FEDERAL PRACTICE AND PROCEDURE (*Evidence*) § 5250 (1978 and Supp. 1992). More importantly, the fourth factor

(section 5250 n. 39 at 547–548) reads that the prosecution would be wise to preserve evidence of other crimes for use on rebuttal when the judge can more accurately consider the degree of relevance and potential abuse. *See and compare United States v. Jones*, 476 F.2d 533, 537 (D.C.Cir. 1973). This is exactly what occurred.

The authors Wright and Graham have pointed out ten factors which the trial court should consider in exercising its discretion to either include or exclude evidence of other acts. These factors are crucial to the balancing function. Under this record each factor is satisfied in favor of the admissibility of the extraneous or other crimes, wrongs, or acts. The ten factors are: (1) probative worth, (2) need to prove the issue, (3) sufficiency of other evidence, (4) availability of other proof, (5) strength of the proof of the other crime, (6) prejudice, (7), time required to prove other crime, (8) nature of the proof of the other crime, (9) motivation of the offeror, and (10) other factors appropriate under Rule 403. Again, each factor was compellingly satisfied by the evidence and the developments at trial at the time the trial judge finally (and after careful consideration) admitted the objected-to evidence before the jury. With respect and deference, I reach a different conclusion from that of the majority after considering the chronology of the developments at trial.

In my view, the long periods of rape amounting up to an hour and a half, the anal intercourse, and fondling and demands for self masturbation on the part of and against the female, when taken together, show an attitude of the degradation of women.

The record reflects that the trial judge did perform the balancing test or the balancing process. Note also that the Court of Criminal Appeals wrote in *Montgomery*, *supra*, at 387 that in substance, how compellingly the evidence of the extraneous misconduct or extraneous acts served to make more or less probable a fact of consequence, that is, its inherent probativeness is clearly a factor. And this factor may be characterized as a function of the similarity

of the extraneous acts to the indicted offense. But again, this factor, although often a consideration, is by no means invariably a consideration. *See and compare Robinson v. State,* 701 S.W.2d 895, 898 (Tex.Crim.App.1985). The key word or concept is similarity. That is, similarity between the prior extraneous acts and the offense charged. This has been considered to be an important measure of probative value. *Id.* at 898. The probative value of similar prior acts has been said to be based on the doctrine of chances. The doctrine of chances is an instinctive recognition of that logical process by multiplying instances of the same or similar actions. An absolute accurate test has not been formulated. *Id.*

Judge Campbell, in *Robinson,* quoted from 2 Wigmore, *Evidence,* § 302 (Chadbourn rev. ed. 1979), in part, as follows:

" 'Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but that the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them.' "

Under TEX.R.CRIM.EVID. 404(b) the threshold inquiry is whether the evidence is probative of a material issue other than character. The evidence of similar acts is admissible if the jury can reasonably conclude that the prior similar acts occurred and that the accused was the actor. These tests are clearly established in this record. Relevancy exists when there is a reasonable relation between an item of evidence and a matter or an issue, such as identity, being properly provable in the case. Prior similar acts and the evidence and testimony thereof should be admitted before the factfinders if there is sufficient evidence to support a finding by the jury that the accused committed the prior similar acts. Our record is glaringly clear on this point. And the objector should move to strike the challenged evidence at the close of the trial if the offeror has failed to satisfy such tests. The prosecution has not paraded a litany or a series of episodes of *unfair* prejudicial similar acts. Prior similar acts coming from the unequivocal and unimpeached testimony of the ex-wife are fully substantiated. *See Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

Due to the timing of the admission of the extraneous acts being late in the trial and being after the appellant had raised his strategic defenses and due to the then-need of the prosecution to rebut the raised defenses of the appellant and in view of a lack of a request from appellant for a limiting jury instruction and in view of the extremely brief nature of the challenged testimony and in view of several startling, dramatic and extraordinary similarities between and among the extraneous offenses and acts clearly proved by the ex-wife and the repeated sexual assaults of very like nature committed against the complainant-victim and since the probativeness and relevancy of the prior acts clearly outweighed any *unfair* prejudice and in view of the fact that the trial court properly balanced the probativeness as against any undue, *unfair* prejudice at the correct time for the balancing test and in view of the lack of any *unfair* prejudice inasmuch as the extrinsic acts were relevant and were not tendered to prove some fact not pertinent to the indicted offense and inasmuch as the ten factors of WRIGHT & GRAHAM were amply met, I would vote to affirm the judgment and sentence below.