Terry Lee COOPER, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–94–046 CR.

Court of Appeals of Texas,
Beaumont.

June 14, 1995.

758

Charles T. Moreland, Conroe, for appellant.

Daniel Rice, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

In a single indictment, appellant was charged with two counts of Aggravated Sexual Assault involving separate minor victims with the incidents allegedly taking place on separate dates. The victims are the son and daughter of a woman with whom appellant lived for approximately four years. A jury found appellant guilty on both counts. Following appellant's plea of "true" to a single enhancement paragraph, the trial court assessed punishment at seventy-eight (78) years' confinement in the Institutional Division of the Texas Department of Criminal Justice, and further assessed a fine of $10,-000. Appellant raises two points of error on appeal, *viz:*

> Point of Error One: The trial court committed reversible error when it failed to grant a mistrial after the State's witness testified to the defendant's prior criminal record.

> Point of Error Two: The court erred in permitting, over appellant's objection, the ex-wife's testimony about the appellant's sexual practices.

Appellant's complaint under his first point of error centers around the following portion of testimony from the State's outcry witness, a Child Protective Services caseworker, with regard to her interview with the young male victim:

Q. [Prosecutor] Did he describe the sexual abuse to you?

A. [CPS worker] Yes, he did.

Q. And what did he tell you?

A. He described anal penetration, oral sex, fondling. He also said that he had been threatened. He had been threatened by Mr. Cooper not to tell anyone.

Q. Do you recall the specific threats that he received?

A. It was from several things that were said about his past murder he had committed, and that he was capable of committing murder, and the child already knew about the murder.

At this point, appellant's trial counsel requested to approach the bench and the trial court agreed. A bench conference took place in which trial counsel complained that appellant's motion in limine had been violated by the witness's reference to an extraneous offense. The State responded somewhat apologetically. Trial counsel then requested the trial court to instruct the jury to disregard. The trial court immediately instructed the jury as follows:

> BY THE COURT: Ladies and gentlemen, the Court will ask that you disregard the last statement of the witness, and that you will not consider it for any purpose. Treat it as though you'd never heard it.

Appellant's trial counsel then moved for a mistrial. Following another bench conference, the trial court denied appellant's motion.

■ In his brief, appellant recognizes the general rule that a timely instruction to disregard will cure most improper evidence placed before a jury. Appellant, however, focuses his argument on the exception to this rule that an instruction to disregard will not cure error "in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *See Kelley v. State*, 677 S.W.2d 34, 36 (Tex.Crim.App. 1984). Out of several cases cited by appellant in his brief, the only one that resulted in a conviction being reversed was *Robinette v. State*, 816 S.W.2d 817 (Tex.App.—Eastland 1991, no pet.). The Court in *Robinette* also recognized the general rule regarding curative instructions to disregard. However, what distinguishes the circumstances in *Robinette* from those in the instant case is that in *Robinette* the State had just elicited from its own witness evidence of an extraneous offense involving the defendant to which the trial court sustained an objection by defense counsel. Immediately thereafter, the State asked the witness, a close friend of the defendant, about the defendant's "macho attitude about people." When the witness acknowledged that the defendant did have such an

attitude, the State continued the inquiry as follows:

> Q. [State] Did he ever brag about anything that he did in a macho sort of fashion?
>
> A. [State's witness] Yes, sir.
>
> Q. And what was that in particular?
>
> A. He bragged he killed a police officer one time.

*Id.* at 819.

In holding that the trial court's subsequent instruction to disregard did not cure the error, the Eastland Court provided the following explanation:

> The witness [first] testified that he was told by Rose that appellant held a knife at her throat and at her dog's throat. This testimony was inadmissible. The court sustained appellant's objection. The prosecutor then immediately returned to the forbidden extraneous offense area and elicited before the jury testimony that appellant had bragged about killing a police officer. We hold that the question and answer were clearly calculated to inflame the minds of the jury and were of such character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds.

*Id.* at 819.

■ By contrast in the instant case, the form of the State's question was not presented in an inflammatory manner. The witness's response was, arguably, not entirely inadmissible as the fact that the appellant may have told the victim that he (appellant) was "capable of committing murder" is the type of specific threat admissible to show appellant's intent to force the victim to comply with his sexual demands. Furthermore, the trial court promptly, and quite authoritatively, admonished the jury to "disregard" the witness's statement; to "not consider it for any purpose;" and to treat the statement "as though you'd never heard it." We find that the trial court's instruction to disregard sufficiently cured whatever prejudicial effects arose from the response in question. *See Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim.App.1992), *cert. denied*, — U.S. —,

113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). Point of error one is overruled.

Appellant's second point of error is based upon a portion of the testimony elicited from the State's witness, Melanie Norris. Ms. Norris is the mother of the two victims. Recall that appellant lived with Ms. Norris and the two victims for approximately four years. It was during this period of time that the offenses were allegedly committed. The record reflects that Ms. Norris was the second witness called by the State, having followed the CPS caseworker who was the State's initial witness. We now reproduce the pertinent portion of the record in order to aid in our discussion of point of error two:

Q. [Prosecutor] Do you recall when you met Terry Cooper?

A. [Ms. Norris] Yes, ma'am.

Q. Okay. When was that?

A. In '86.

Q. Okay. When did you start seeing him like, I guess dating, or romantically?

A. In '87.

Q. Okay. Did he subsequently move in to live with you?

A. Yes.

Q. And when was that?

A. November 19th of '87.

Q. Okay. How long did y'all live together?

A. Four years.

Q. Did you have a sexual relationship with Terry Cooper?

A. Yes.

Q. Okay. Did you think that you had a healthy sexual relationship with Terry Cooper?

A. No.

Q. Why not?

A. Because some of the things just weren't natural.

Q. Okay, you mean some things like what?

[Defense Counsel]: Your Honor, may we approach the Bench?

BY THE COURT: You may.

**BENCH CONFERENCE**

[Defense Counsel]: I think it's irrelevant, her sexual relationship with Terry.

[Prosecutor]: May I explain?

BY THE COURT: Yes ma'am.

[Prosecutor]: I think it's highly relevant, Your Honor. It goes to the same *pattern* that was used on the children in this case, not just with respect to the type of sex.

[Defense Counsel]: I mean, is she gonna testify that they had anal sex, but I don't any (sic) other aspects of it, you know, going into something else, I think it would be just inflammatory. I don't really know what she will say.

[Prosecutor]: That they had anal sex.

BY THE COURT: I'll overrule the objection.

**DIRECT EXAMINATION** (Continuing)

Q. [Prosecutor] Okay. Melanie, I asked you if, in your opinion, you had a healthy sexual relationship with Terry Cooper.

A. [Ms. Norris] And the answer was no.

Q. Okay. You said that—correct me if I'm wrong, but that he wanted to do some unnatural things? Is that what you said?

A. Yes.

Q. Okay. I'm gonna ask you to tell the members of the jury, please, what those things were. Be specific.

A. He would want me to have anal sex.

Q. Okay. And did you have anal sex with him?

A. Yes.

Q. Do you recall how many times you may have had anal sex with him?

A. Approximately three.

Q. Did you want to have anal sex with him?

A. No.

Q. Did you think that you could have prevented having anal sex with Terry Cooper?

A. No.

Q. Why not?

A. Because that's what he wanted to do, and he told me that I was gonna do it. (emphasis supplied)

Following Ms. Norris's testimony, the record reflects that each victim took the witness stand and testified that appellant engaged in anal intercourse with them, as well as oral sex, and also vaginal intercourse in the case of the female victim. Appellant argues that Ms. Norris's testimony concerning the anal intercourse was not admissible under either TEX.R.CRIM.EVID. 404(b) or TEX.R.CRIM.EVID. 403. Recall that the State's purpose for admitting said testimony was to show "the same pattern that was used on the children in this case[.]"

In *Owens v. State,* 827 S.W.2d 911 (Tex. Crim.App.1992), the defendant was charged with aggravated sexual assault on his eleven year old daughter. The defendant took the stand and denied the allegations. As a rebuttal witness, the State called the defendant's eldest daughter in order to testify that she too had been sexually "molested" by the defendant when she was approximately eleven years old. The trial court admitted the older daughter's testimony on the theory that it tended to prove the criminal "system" of the defendant. The *Owens* Court recognized that the term "system" is synonymous with the terms "modus operandi" and "methodology" to refer to a defendant's distinctive and idiosyncratic manner of committing criminal acts. *Id.* at 914. The Court went on to observe that evidence of a defendant's particular modus operandi is a recognized exception to the general rule precluding extraneous offense evidence if the modus operandi evidence tends to prove a material fact at issue, *other than propensity. Id.* at 915.

In the instant case, both parties recognize similarities between the facts now before us and those presented to us and discussed in *Bishop v. State,* 837 S.W.2d 431 (Tex.App.— Beaumont 1992), *aff'd,* 869 S.W.2d 342 (Tex. Crim.App.1993). One key difference, however, is the fact that in *Bishop* identity of the perpetrator was the main issue, and the testimony from Bishop's ex-wife concerning his sexual proclivities was offered for that purpose. Identity is one of the enumerated exceptions listed in Rule 404(b). However, we held such testimony relevant but nevertheless inadmissible because, for purposes of proving identity, such evidence must demonstrate a higher degree of similarity to the charged offense than extraneous misconduct offered for other purposes such as intent. *Bishop,* 837 S.W.2d at 434–435.

■ In the instant case, even if it can be argued that Ms. Norris's testimony regarding the anal intercourse was sufficient to establish appellant's "modus operandi," or "signature," we find that such evidence was not relevant to any material fact in dispute. The record before us indicates that identity was clearly not an issue. We quote at length from *Owens:*

In the case at bar, however, we fail to discern how the evidence of defendant's "system" has any relevance, beyond propensity, when there was no contested issue of identity or any of the other grounds for admission listed in Rule 404(b). In discussing the improper admission of extraneous offense evidence on a "pattern" (i.e., "system") theory, Judge Easterbrook, writing for the Seventh Circuit, cautioned:

The inference from "pattern" by itself is *exactly* the forbidden inference that one who violated the [laws] on one occasion must have violated them on the occasion charged in the incident. Unless something more than pattern and temporal proximity is required, the fundamental rule is gone. That is why "pattern" is not listed in Rule 404(b) as an exception. Patterns of acts may show identity, intent, plan, absence of mistake, or one of the other listed grounds, but a pattern is not itself a reason to admit the evidence. *United States v. Beasley,* 809 F.2d 1273, 1278 (7th Cir.1987) (emphasis in original)[.]

*Owens,* 827 S.W.2d at 916.

In the instant case, the State's appellate brief claims Ms. Norris's testimony was relevant to show appellant's "intent" to have anal sex and that threats and intimidation of the victims by appellant created the "opportunity" to engage in anal sex. These were not the reasons propounded by the State at trial for admissibility. Furthermore, these contentions in the State's appellate brief seem to be a rather transparent attempt at resurrecting admissibility at the eleventh hour. At any rate, we are not prepared to concede

that evidence of otherwise consensual sexual relations between an adult male and female, albeit involving anal intercourse, is relevant in the prosecution of said adult male for engaging in forcible sex acts perpetrated upon male and female children, albeit also involving anal intercourse.

Based upon the record before us, we find that the purpose of Ms. Norris's testimony was intended to prove nothing more than the character of appellant in order to show that he acted in conformity therewith. This is exactly what Rule 404(b) prohibits. At the time of Ms. Norris's testimony, the victims had not yet testified so impeachment of their testimony was not facing the State as it questioned Ms. Norris. Obviously, the appellant had not testified and denied the allegations so rebuttal was also not an issue facing the State. The fact that Ms. Norris did not testify to an extraneous "offense" is of no consequence. *See Bishop,* 869 S.W.2d at 345. For all of the reasons discussed above, we find that the trial court erred in admitting Ms. Norris's testimony concerning the anal intercourse with appellant.

Having found trial error, TEX. R.APP.P. 81(b)(2) requires that we examine the proceedings to determine if, beyond a reasonable doubt, the error made no contribution to the conviction. We recognize at the outset that the proper application of Rule 81(b)(2) *mandates* reversal unless the reviewing court can reach the above referenced conclusion. *Harris v. State,* 790 S.W.2d 568 (Tex.Crim.App.1989). Furthermore, as the reviewing court, we are obligated to examine the entire record in a neutral, impartial and even-handed manner, and not in the *Jackson v. Virginia*[1] "light most favorable to the verdict...." *Harris, supra* at 586. As the *Harris* Court points out, "A review of the evidence in this manner is necessary because, for example, an error can be harmful when it has the effect of disparaging a defense, whereas if there is no defense the error could have been harmless." *Id.* This language from *Harris* places us in an immediate quandary with regard to our harm analysis. Unlike the *Bishop, supra* case in which the harmful evidence was elicited by the State

during the defendant's case-in-chief, at which time his defense had been fully developed, the record in the instant case reflects that the erroneous testimony from Ms. Norris was elicited by the State during its case-in-chief, with Ms. Norris being only the second witness called. From only his cross-examination of the State's first witness, it is difficult to see any clear defense strategy being laid by appellant's trial counsel. From later cross-examination testimony and defense witnesses it is apparent that the "defense" of fabrication by the victims was placed before the jury. Whether this was the defense strategy prior to the erroneous testimony from Ms. Norris is difficult to say. Nevertheless, Ms. Norris's testimony regarding the anal intercourse, with all of its negative connotations, set the stage for the victims to testify to the peculiarly "unnatural" sex act perpetrated upon them by appellant. As we pointed out in *Bishop,* 837 S.W.2d at 434, sexually related "misconduct" is inherently inflammatory. *See also, Montgomery v. State,* 810 S.W.2d 372, 397 (Tex.Crim.App. 1990) (opinion on rehearing). Under the facts of the instant case, the admission of Ms. Norris's testimony regarding the anal sex, admissible for no other purpose than character conformity, had the practical effect of prejudicing any defense raised by appellant regarding the victims' credibility.

We note that a Rule 81(b)(2) analysis under *Harris* requires us the examine the source and nature of the error, whether and to what extent said error was emphasized by the State, said error's probable collateral implications, how much weight a juror would probably place upon the error, and whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris, supra* at 587. A review of the entire record indicates that the State did not again mention nor emphasize the erroneous testimony of Ms. Norris. This is only one prong of the analysis, however. Unlike the situation in the *Bishop* case, Ms. Norris's testimony was neither relevant to any issue before the jury, nor was it used in any rebuttal-type fashion following impeachment of the victims

or other depreciation of the State's case by appellant's defense strategy. Furthermore, considering the similarity in the conduct for which appellant was indicted and the conduct described by Ms. Norris, we believe the jury would have placed great weight on the erroneously admitted testimony as it further proved the "unnatural" sexual preference of appellant. Finally, the State in the instant case had the benefit of our analysis of the similar situation in *Bishop*, which involved the same prosecuting agency, and the Court of Criminal Appeals' opinion in *Owens*. We therefore see at least the hint of impunity upon the part of the State in the manner in which it elicited the erroneous, and we conclude, harmful, testimony from Ms. Norris. Under the *Harris* analysis, we cannot say, beyond a reasonable doubt, that the error in admitting the testimony in question did not contribute to appellant's conviction. Point of error two is sustained. The judgment of the trial court is reversed and the cause is remanded to said court for a new trial on the merits.

REVERSED AND REMANDED.