# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================

## ON MOTION FOR REHEARING

========================

## NO. 03-99-00824-CR

**Corwyn Lamar McGinnis, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
## NO. 0993421, HONORABLE JON WISSER, JUDGE PRESIDING

We withdraw our opinion and judgment of March 8, 2001, and substitute this in its place.

Appellant Corwyn Lamar McGinnis[1] was convicted by a jury of the capital murder of Leticia Duarte McGhie, who was murdered after attending a New Year's Eve party on December 31, 1996. Tex. Penal Code Ann. § 19.03(a)(2) (West 1994). The State did not seek the death penalty, and appellant was automatically sentenced to life imprisonment. *Id.* § 12.31(a) (West 1994). In six points of error, appellant contends he should have been granted a mistrial due to inadmissible extraneous offense evidence and is entitled to a new trial due to prosecutorial misconduct. We will affirm.

---

[1] Throughout the record, appellant's name is spelled both as "McGinnis" and "McGinnies." We use the spelling "McGinnis," as spelled in the judgment of conviction.

**Standard of Review**

We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); *Bryant v. State*, 25 S.W.3d 924, 926 (Tex. App.—Austin 2000, pet. ref'd). Generally, a prompt instruction to disregard an improper question, answer, or argument will cure any error. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987); *Bryant*, 25 S.W.3d at 926. We rely on the jury's ability, when so instructed, to recognize the potential for prejudice and then consciously discount any prejudice in its deliberations. *Gardner*, 730 S.W.2d at 696.

An improper question and answer, even regarding an extraneous offense, is cured by an instruction to disregard except in extreme cases where the evidence appears clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the prejudicial effect. *Id.* (quoting *Campos v. State*, 589 S.W.2d 424, 428 (Tex. Crim. App. 1979)); *see also Lucas v. State*, 378 S.W.2d 340, 341-42 (Tex. Crim. App. 1964) (prejudicial question violated motion in limine and asserted extraneous offense as fact); *Bryant*, 25 S.W.3d at 925-26 (State's question improperly "aggravate[d] any lingering prejudice against interracial couples among the jurors"); *Govan v. State*, 671 S.W.2d 660, 663 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) (witness "recalled solely for the purpose of giving the inadmissible testimony" testified about inadmissible extraneous offense after State said it would not bring in such evidence; evidence of guilt not so overwhelming that inadmissible evidence could be considered harmless).

Except for one sentence at the end of his discussion of his fifth point of error, appellant urges only non-constitutional errors. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Tate v. State*, 988 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd). Therefore, unless an error at trial affected his substantial rights, it must be disregarded. Tex. R. App. P. 44.2(b); *Aguirre-Mata v. State*, 992 S.W.2d 495, 498 (Tex. Crim. App. 1999); *Tate*, 988 S.W.2d at 890. To the extent that appellant raises a meritorious constitutional complaint, we must reverse the judgment unless we determine beyond a reasonable doubt that the error, if any, did not contribute to appellant's conviction. Tex. R. App. P. 44.2(a).

## Drug-related Extraneous Offenses

In his first point of error, appellant contends he should have been granted a mistrial after Jaclyn Lindsey testified about an extraneous drug-related offense. In his fourth point, he argues the district court erred in overruling his objection to similar testimony given by Charlene Shannon.

Lindsey testified she had known appellant since 1995, when she was dealing drugs. She said she "gave [appellant] some dope to sell for me. We were working together." Appellant objected, and the district court sustained the objection, striking the testimony and instructing the jury to disregard it. Appellant then moved for a mistrial, which was denied. Charlene Shannon admitted she had been convicted of drug possession, prostitution, and theft, and had used crack cocaine, marijuana, and PCP. She said she met appellant in late 1997 and eventually became sexually intimate with him. Shannon said, "It wasn't actual intercourse. . . . It was oral sex most of the time." She then testified that she and appellant usually did drugs while they had oral sex. Appellant objected, and the district court overruled the objection.

3

Reference to a defendant's drug use or previous drug offenses is usually curable by a timely instruction to disregard. *Dickey v. State*, 979 S.W.2d 825, 829 (Tex. App.—Houston [14th Dist.] 1998), *rev'd on other grounds*, 22 S.W.3d 490 (Tex. Crim. App. 1999). Further, the record contains numerous other references to appellant's involvement with drugs to which no objection was made. Appellant testified that he had attended the same New Year's Eve party as the victim, where he drank and smoked marijuana. He testified about Lindsey, saying, "[S]he was a prostitute of mine . . . . That means she sold herself for me, brought me the money, I took the money and would give her crack/cocaine in return and make sure she was safe and gave her a place to live, sir." He said, "I'm not denying that I used to be a gang member and I'm not denying I sold drugs or gave drugs to women or protected women or they sold their self for me." He testified that he "wouldn't keep continuing giving Charlene Shannon drugs, so she had to do what any other woman would do that was getting drugs for free, earn her money. Because I was out there selling drugs." Finally, he said, "I made a lot of enemies out there selling drugs and gang banging."

The district court's instruction to disregard cured any error in Lindsey's testimony about appellant's drug history. *See Ovalle*, 13 S.W.3d at 783; *Dickey*, 979 S.W.2d at 829. Assuming it was error to overrule his objection to Shannon's testimony about his drug use and sexual behavior, appellant's substantial rights were not harmed. *See* Tex. R. App. P. 44.2(b); *Tate*, 988 S.W.2d at 890. Appellant admitted he sold and used drugs. Any impact the evidence might have had was minimal and likely had little, if any, effect on the jury's verdict. *See Stoker v. State*, 788 S.W.2d 1, 13 (Tex. Crim. App. 1989). We overrule appellant's first and fourth points of error.

**Testimony About Attempts To Intimidate Witnesses**

In his third point of error, appellant argues the district court should have granted him a mistrial due to Clint Longley's testimony that he feared he would be hurt if he testified against appellant. In his fifth point of error, he argues he should have been granted a mistrial due to similar testimony given by Austin homicide detective Mark Gilchrist.

When called to testify, Clint Longley stated he did not want to testify. He said, "I asked you [the prosecuting attorney] if you—you'd have to bring something written on gold to protect me if I somehow were to come here to testify against [appellant]." The State questioned Longley as follows:

Q: After you received [a letter from appellant's girlfriend], were you concerned about testifying in this trial?

A: Yes.

Q: Are you currently incarcerated with a relative of the defendant's?

A: Not now, no.

Q: Within the last week or so did you have contact—

[Appellant's attorney:] Judge, I'm going to object to this. It is clearly prejudicial.

The Court: We'll sustain the objection.

[Appellant's attorney]: I'm going to ask that the jury be asked to disregard the testimony.

The Court: What testimony?

[Appellant's attorney]: The question and the testimony from the witness.

The Court: We will sustain the objection to the question. I don't think he answered the question.

| [Appellant's attorney]: | I have an objection to anything, like I said, regarding this area. It is extremely prejudicial and I'm objecting to it and asking for a mistrial. |
|---|---|
| The Court: | We will sustain the objection. I will decline the mistrial request. |

At the point appellant objected, Longley had not answered the State's question. The State had not yet finished asking the question. Appellant did not object to the preceding questions and answers about whether Longley had concerns about testifying.

Other similar evidence was admitted without appellant's objection. Lindsey testified that appellant said he had murdered the victim, which made her "[a] little of it scared of [appellant], wanting to not upset him, you know, not to—try more or less to forget about it, try to avoid it." Initially, she did not tell the police that appellant had admitted to the murder

> [b]ecause at the time I was living a lifestyle where we have a certain code, and that code is, you know, you don't say nothing. The police are on one side and we're on the other, and it's like two different worlds. You just don't talk with the police and—because you could die. A person can get killed talking to the police. . . . by the crowd that you hang out with.

Lindsey later reconsidered and reported her conversation with appellant. She was asked, "Were you still afraid of [appellant] at that point?" She answered, "Yeah. [Appellant] is a very powerful man." Lindsey said appellant's girlfriend told Lindsey to "stay quiet, to try to not—you know, in other words, to protect him because if I didn't, I was going to be hurt." Lindsey was afraid for herself and her child and left Austin because she was scared and appellant is powerful.

6

Shannon testified that appellant told her he had murdered the victim and said, "Bitch, I'll kill you like I did that other one. Don't mess with me." Appellant himself testified that "if you come to me and you do something to me and it hurt [sic] me, I'm going to do something to you that's going to hurt you." Finally, Richard Rushing, a friend of appellant's, testified about the code of conduct within the gang to which he and appellant belonged:

Q: And within the gang, you'd agree with me that it's against the code to testify against another gang member?

A: Yes, sir.

Q: People who break that code get hurt?

A: I would like to think so. You know what I'm saying?

The question to which appellant objected was incomplete and went unanswered. Similar unobjected-to testimony indicated that witnesses feared retaliation if they testified against appellant. The district court did not abuse its discretion in refusing to grant a mistrial based on the State's examination of Longley. We overrule appellant's third point of error.

Likewise, the district court did not abuse its discretion in refusing to grant a mistrial as a result of Detective Gilchrest's testimony. Gilchrest testified about his involvement in the murder investigation. Asked about the attitudes of potential witnesses, he responded, "Almost everyone we attempted to contact or did contact expressed a fear of cooperating with the police in any way regarding this investigation because they were afraid of retaliation by [appellant]." Appellant objected, and the district court sustained the objection, instructed the jury to disregard the testimony, and denied appellant's request for a mistrial. Appellant argues that the detective's statement denied

him due process under the 4th Amendment and due course of law under Article I, Section 19, and that therefore the trial court erred by denying his request for mistrial. *See* U.S. Const. amend. XIV; Tex. Const. art. I, § 19.

While we recognize that Gilchrest, as a police officer, is an experienced witness who should not have introduced evidence of extraneous offenses into his testimony, *see Hadden v. State*, 829 S.W.2d 838, 843 (Tex. App.—Corpus Christi 1992, pet. ref'd), we do not believe that his statement that witnesses were reluctant to testify for fear of retaliation was incurable by an instruction to disregard. Gilchrest's single response did not rise to the level of seriousness described in *Hadden*, in which the police witness intentionally interjected inadmissible evidence despite repeated objections, admonishments, and instructions by the court not to do so. *Id.* at 841-42. As noted above, the record contained other testimony about witnesses fearing retaliation should they harm appellant. We believe that the instruction by the court cured any error. Further, even assuming the error, if any, to be of constitutional dimension, we hold beyond a reasonable doubt that, in light of the entire record, Gilchrest's stricken statement did not contribute to appellant's conviction. We overrule appellant's fifth point of error.

### Testimony That Appellant Had Killed Before

In his second point of error, appellant contends the district court should have granted a mistrial based on testimony Lindsey gave about a conversation she had with appellant. Lindsey testified that she had heard rumors about appellant's involvement in the murder, so she asked him if he had killed the victim. Lindsey said appellant "laughed and said yes." He told Lindsey the victim would not give him sex after he shared his drugs with her, so he killed her. Lindsey further testified

8

that appellant then said, "It wasn't the first time." Appellant objected to this remark, and the district court sustained the objection and instructed the jury to disregard; the court denied his motion for a mistrial.

Appellant cites *Robinette v. State*, 816 S.W.2d 817 (Tex. App.—Eastland 1991, no pet.) to support his argument that the district court's instruction to disregard was insufficient to cure Lindsey's testimony that he said it was not the first time he had killed someone. The prosecutor in *Robinette* elicited testimony about one extraneous offense, the defendant objected, and the trial court sustained the objection. *Id.* at 819. "The prosecutor then immediately returned to the forbidden extraneous offense area and elicited before the jury testimony that [the defendant] had bragged about killing a police officer." *Id.* In reversing the conviction, the *Robinette* court emphasized the State's bad behavior that led to the introduction of the inadmissible evidence. *Id.*

Our case is distinguishable. Lindsey testified that appellant told her he had killed the victim because she had shared his drugs but refused to have sex with him. The objectionable testimony came in when the State asked her to recall and relate the exact words appellant used in talking about the murder. After the district court sustained appellant's objection and instructed the jury to disregard the response, the State moved on and did not attempt to pursue the issue of extraneous offenses. It is not clear from the record that the State purposefully elicited the inadmissible evidence, nor does it appear that the testimony was "clearly calculated to inflame the minds of the jury and [was] of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *Kelley v. State*, 677 S.W.2d 34, 36 (Tex. Crim. App. 1984). The district court did not abuse its discretion in refusing to grant appellant a mistrial. *See Richards*

9

*v. State*, 912 S.W.2d 374, 378 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd); *Cooper v. State*, 901 S.W.2d 757, 759 (Tex. App.—Beaumont 1995), *pet. dism'd, improvidently granted*, 933 S.W.2d 495 (Tex. Crim. App. 1996). We overrule appellant's second point of error.

### Prosecutorial Misconduct

In his sixth point of error, appellant argues he should have a new trial because points of error one through five "are evidence of prosecutorial misconduct and the State's attempt to thwart appellant's right to a fair trial." On rehearing, appellant suggests that by overruling his points of error "the Court of Appeals has put its stamp of approval on this unprofessional conduct . . . ." We disagree.

In support of his argument, appellant cites *Rogers v. State*, 725 S.W.2d 350 (Tex. App.—Houston [1st Dist.] 1987, no pet.). *Rogers* involved flagrant and repeated misconduct by the prosecutor during cross-examination of the defendant and several character witnesses. *Id*. at 351-58. The State repeatedly made side-bar remarks and asked improper questions, often asserting as fact alleged misconduct. *Id.* at 360. The *Rogers* court concluded that the prosecutor acted in bad faith and that her behavior "could serve no purpose other than to inflame and prejudice the minds of the jurors." *Id.* The court noted "many instances where the prosecutor appear[ed] to fabricate inflammatory facts and suggest[ed] them into evidence by cross-examination," and concluded that the "impermissible prejudice permeate[d] the entire record" and even frequent instructions to disregard would not have cured the error. *Id.* at 360-61. Although the State's conduct is not exemplary in that it could have taken greater care in guarding against inadmissible evidence, the

10

record does not support appellant's assertion that the prosecution deliberately solicited improper testimony.

The record before us consists of nearly five days of testimony on guilt/innocence by eighteen State witnesses and ten defense witnesses, including appellant himself. On rehearing, we have again reviewed the record, and we again conclude that the questions and answers of which appellant complains do not so permeate this record as to render the district court's prompt instructions to disregard ineffectual. We hold that appellant has not shown that the district court abused its discretion in refusing to grant a mistrial based on the cumulative effect of the inadmissible evidence. We overrule appellant's sixth point of error.

### Conclusion

Having overruled all six of appellant's points of error, we affirm the district court's judgment.

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson.

Affirmed

Filed: May 17, 2001

Do Not Publish

11